PEOPLE v WILLIAMS

Docket No. 78-2853. Submitted June 20, 1979, at Lansing.—Decided December 19, 1979.

John S. Williams was charged with and found guilty of breaking and entering an occupied dwelling with intent to commit a larceny therein. At defendant's nonjury trial in Ingham Circuit Court, James T. Kallman, J., co-participant Jeffrey Robinson repudiated his preliminary examination testimony that the defendant had been involved in the breaking and entering which was the subject of this prosecution. At trial, Robinson testified that, while the defendant and he had engaged in another breaking and entering on the day in question, the defendant had not participated in the breaking and entering which was the subject of this prosecution. Robinson's preliminary examination testimony was admitted for impeachment purposes. Further testimony showed that at the time of the defendant's and Robinson's arrest they were occupying an automobile in which an item taken in the subject breaking and entering was found and that a checkbook taken in the subject crime was found in the patrol car which had been used to transport defendant and Robinson to jail in a spot under the front seat directly in front of the rear seat occupied by defendant. This testimony was at variance with Robinson's trial testimony that he had placed that checkbook in the crease in the back seat of the patrol car. The trial judge, after indicating that he was not considering Robinson's prior inconsistent testimony as substantive evidence, found that the inferences flowing from the undisputed evidence convinced the court beyond a reasonable doubt of defendant's participation in the subject crime. Defendant appeals. On appeal the prosecution argues that Robinson's preliminary examination testimony should be considered as substantive evidence and, in any event, that the evidence was sufficient to support a finding of defendant's guilt beyond a reasonable doubt. *Held:*

1. The Michigan Supreme Court has held that prior state-

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses §§ 596, 599, 631.

[2] 20 Am Jur 2d, Courts § 183 *et seq.*

[3] 29 Am Jur 2d, Evidence §§ 266, 1170 *et seq.*

ments by a witness which are inconsistent with the witness's trial testimony may be admitted for impeachment purposes, but such prior inconsistent statements may not be considered as substantive evidence at trial. Since an intermediate appellate court generally is not free to disregard the precedent of the highest court, the Court of Appeals will decline to disregard, override or re-examine a holding of the Supreme Court in the absence of Michigan authority to justify such reevaluation by the Court of Appeals. Accordingly, the prosecution's suggestion that Robinson's preliminary examination testimony be considered as substantive evidence at trial is rejected.

2. The evidence considered by the trial court, even disregarding Robinson's disputed preliminary examination as substantive evidence, was sufficient to support the trial court's conclusion that defendant's participation in the crime had been proven beyond a reasonable doubt. While some of the inferences necessary to support that conclusion may have been built upon other inferences, the use of an inference on an inference does not negate the validity of the ultimate inference if, on the totality of the evidence, both the primary and secondary inferences are of a compelling nature. Likewise, the failure to specifically negate a hypothesis of innocence presented by a defendant does not negate a finding of guilt unless the hypothesis presented is of such a compelling nature that it creates a reasonable doubt on the part of the trier of fact.

Affirmed.

1. WITNESSES — PRIOR INCONSISTENT STATEMENTS — ADMISSIBILITY — SUBSTANTIVE EVIDENCE — IMPEACHMENT.

Prior statements by a witness which are inconsistent with the witness's trial testimony may be admitted at trial for impeachment purposes; however, such prior inconsistent statements may not be considered as substantive evidence at trial.

2. COURTS — INTERMEDIATE APPELLATE COURT — PRECEDENT.

An intermediate appellate court generally is not free, where the highest court has spoken, to disregard the precedent of the highest court; accordingly, where there is no Michigan authority which justifies the Court of Appeals disregarding, overriding or re-examining a holding of the Supreme Court, the Court of Appeals will follow the precedent of the Supreme Court.

3. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — INFERENCES.

There is sufficient evidence to support a finding of guilt in a

criminal trial where the totality of the circumstantial evidence presented at trial gives rise to inferences of such a compelling nature with respect to the defendant's participation in the criminal act that the trier of fact is convinced that the defendant is guilty beyond a reasonable doubt, notwithstanding the fact that some of the inferences may have been built upon other compelling inferences and that each of the defendant's hypotheses of innocence may not have been specifically rebutted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Michael G. Woodworth,* Chief Appellate Attorney, *Charles M. Sibert,* Assistant Prosecuting Attorney, for the people.

*Hankins, Kluck, Robillard & Carlson, P.C.,* for defendant on appeal.

Before: CYNAR, P.J., and MACKENZIE and L. W. CORKIN,* JJ.

L. W. CORKIN, J. On July 27, 1977, defendant was charged with breaking and entering an occupied dwelling with intent to commit larceny therein, MCL 750.110; MSA 28.305. Defendant having waived his right to a jury trial, a bench trial was held before the Honorable James T. Kallman of the Ingham County Circuit Court on February 14, 1978. By written opinion dated March 9, 1978, defendant was found guilty as charged and was, shortly thereafter, sentenced to a term of 4 to 15 years in prison. He appeals as of right from his conviction.

The breaking and entering in question occurred at the residence of Mr. Barry Thompson and wife, located at 6301 Daft Street, Lansing, Michigan. Mr. Thompson testified that he left home for work

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

about 5:45 a.m., July 25, 1977. Having secured the doors and windows at bedtime the night before, he didn't check them again before leaving. His wife was still home when he left, but she apparently left home later.

Mr. Thompson further testified that, on returning home at about 3:20 p.m., he discovered the back door open, the back screen cut and glass on the floor. He immediately called the police, who arrived and inspected the house at about 4 p.m. During the inspection it was found that the bathroom window had been forced open and jammed in that position. The house had been burglarized and several items of personal property were found to be missing, including a unique ceramic buzzard and Thompson's checkbook.

Officer Kuerbitz of the Lansing Police Department testified that he was dispatched in the afternoon of July 25, 1977, to 910 Jerome Street in Lansing to assist officers of the Clinton County Sheriff's Department in a breaking and entering that occurred in their county. After his arrival, he observed a 1972 Chevrolet vehicle fitting the description that he had been given drive into the parking lot at that address. He thereupon arrested the two occupants of the vehicle, one of whom was the defendant and the other being a Jeffrey Robinson. Officer Teszlewicz, another Lansing Police Officer, then arrived to give assistance. The defendant and Robinson were patted down and placed in the backseat of the patrol car about 3:22 p.m. The defendant was seated directly behind the driver and Robinson was seated to his right. The subjects were then taken to the DeWitt Township, Clinton County, police station and left there.

Some two hours later, Officer Teszlewicz was instructed by Officer Kuerbitz to check the back-

seat of the patrol car and, on doing so, found the Thompson checkbook directly under the driver's seat.

Officer Woolfe of the Clinton County Investigation Squad, who was present when the defendant and Robinson were arrested, testified that he had searched the 1972 Chevrolet, which had been transported to the DeWitt Township police station, and found Mr. Thompson's ceramic buzzard in the trunk. This search was made about 4:30 p.m. on the date of the arrest.

The key prosecution witness was Jeffrey Robinson, an unindicted co-participant in the offense of which defendant was convicted. Robinson testified that defendant and he were staying at Robinson's cousin's house at 910 Jerome Street and that the two of them left the house together before 8 a.m. on the morning of July 25, 1977. Robinson was driving his cousin's navy blue 1972 Chevy. They drove to Clinton County, intending to break and enter a home on Chandler Road. Enroute they discussed their mutual need for money.

Robinson further testified that they both entered the house on Chandler Road, but that no property was removed. They departed from the premises because defendant said he had become nervous because of the Chandler Road break-in. Defendant was dropped off at the house of another cousin of Robinson. It so happened that this cousin was a girlfriend of the defendant.

Robinson then proceeded alone to the Thompson home, where he broke into and entered the house and removed the property described as missing from the house. He took all the property, except the buzzard and checkbook, to one Willie Cole's house on Roselawn Street and then picked defendant up at his cousin's house sometime before

noon. They then drove to the Jerome Street address where they were arrested.

Robinson also testified that he stuffed the stolen checkbook in the crease in the back seat of the patrol car after he and defendant had been placed there.

The prosecutor called Robinson's attention to the fact that at the preliminary examination of defendant he had testified that defendant was with him when the breaking and entering of the Thompson house took place. Robinson acknowledged this, but stated that he believed he would be able to go home (as a juvenile), not be charged and get a better deal if he implicated defendant. He also testified that defendant never threatened him in order to force him to change his story and that he had not had any contact with defendant since the preliminary examination.

The record reflects that Robinson was testifying pursuant to a plea bargain agreement whereby he was not charged with the Thompson breaking and entering in return for his preliminary examination and trial testimony.

Officer Kuerbitz testified that he told Robinson he would not be charged with the Thompson breaking and entering, or any other breaking and entering except for the Chandler Road one, if he gave information that would clear up any of them. Robinson had pled guilty to the Chandler Road breaking and entering sometime prior to the instant trial.

Further, the prosecutor, in lieu of calling a witness who lived on Roselawn, a Rose Fleak, stipulated that her testimony, if called, would have been that Robinson brought the stolen property (which was subsequently recovered there) to that

residence on July 25, 1977, and that defendant was not with Robinson when he came.

At the close of the people's proofs, defendant moved for a directed verdict of acquittal, based upon a lack of proof connecting him with the crime. The motion was denied. Defendant then rested without submitting any further proof, and the trial judge took the matter under advisement.

The trial judge found the defendant guilty as charged. The trial court, in its written, opinion made the following findings of fact:

"But, even without this testimony [Robinson's preliminary examination testimony] there is clear and unrebutted evidence that ties this defendant into the crime charged here:

"1. Both intended to commit B & E's to get money.

"2. Both committed one B & E around 9 a.m.

"3. Robinson states he committed the B & E in this case.

"4. Both rode in the same car used to commit the first B & E.

"5. Both needed money.

"6. Both were arrested in the same car later in the day.

"7. Stolen property from Thompson's B & E was found in that car's trunk.

"8. Robinson said while in the patrol car he stuffed the check book into the crease behind him. The stolen check book was found under the front seat in front of the defendant indicating constructive possession in the defendant of the check book.

"9. Both entered into a system or scheme to accomplish satisfying their needs.

"Putting this puzzle together (leaving out and not relying on Robinson's disputed testimony) clearly and logically dictates the defendant's participation in the crime of B & E at the Thompson's. The inference is so strong that defendant participated, this Court is satisfied beyond a reasonable doubt of defendant's guilt."

Two issues are presented for this Court's determination: one concerns the use of Robinson's testimony at the preliminary examination, not only for impeachment purposes, but also as substantive evidence; and the other concerns the sufficiency of the evidence.

The prosecution urges this Court to consider the preliminary examination testimony as substantive evidence, and, thus, find that there was clearly sufficient evidence to support the finding of guilt by the trial court. Strong reasons can be advanced and found in support of the prosecution's argument. The testimony was given under oath. Hearsay problems sometimes attendant with admitting prior statements are not present, because the declarant is available for cross-examination. Since the witness is available for examination, his demeanor and credibility can be assessed by the trier of fact. Prior testimony can be used as substantive evidence if the declarant is found to be unavailable to testify at trial; and the Michigan Rules of Evidence do not expressly prohibit the use of such testimony as substantive evidence. Finally, Federal courts, numerous state courts and respected legal scholars support plaintiff's position. See the notes and annotations following MRE 613 in Michigan Court Rules Annotated, Evidence Rules (West Publishing Co, 1979), pp 445-483.

The issue presented is, however, one to which the Michigan Supreme Court has clearly spoken. In *Ruhala v Roby,* 379 Mich 102; 150 NW2d 146 (1967), it was held that prior statements of a witness which are in conflict with his testimony at trial may be used for impeachment purposes, but such statements are not to be considered as substantive evidence in the case. See also *Smith v Woronoff,* 75 Mich App 24, 31; 254 NW2d 637

(1977), *Rosenberg v Mageda,* 251 Mich 696, 699; 232 NW 397 (1930), and cases cited therein. It should be noted that the rule stated in *Ruhala, supra,* was in an opinion which was signed by a plurality, but not a majority, of the Court; therefore, the present precedential value may be somewhat suspect. That case does not, however, constitute the leading explanation of why Michigan adheres to a rule excluding such prior inconsistent testimony from being considered as substantive evidence.

As a general rule, where the Michigan Supreme Court has spoken, this Court is not free to disregard its precedent. *People v Haggerty,* 27 Mich App 594, 596-597; 183 NW2d 862 (1970), *Peterson v Schuitema,* 56 Mich App 255; 224 NW2d 55 (1974). As no Michigan authority has been cited to justify this Court in disregarding, overriding or reexamining the holding in *Ruhala,* we decline to do so. In any event, the trial judge stated that he did not consider the prior inconsistent testimony as substantive evidence in arriving at his verdict. We, too, will disregard it in this context.

Turning now to the second issue involved, it is recognized at the outset that the case against defendant was entirely circumstantial. This being so, two problems are presented for resolution. In such cases, is it necessary that the prosecution disprove every reasonable hypothesis consistent with defendant's innocence, and if so, can a conviction be predicated solely upon an inference drawn from an inference? There is a disagreement among panels of this Court in the resolution of these issues.

Those panels expressing adherence to the rule that the prosecution must negate every reasonable hypothesis consistent with defendant's innocence

when the evidence is entirely circumstantial have usually set aside convictions that were based upon an inference drawn from a prior inference originally drawn from the evidence.

See, *People v Davenport,* 39 Mich App 252, 255-258; 197 NW2d 521 (1972), *People v Wingfield,* 62 Mich App 161, 163; 233 NW2d 220 (1975), *People v Jablonski,* 70 Mich App 218, 225; 245 NW2d 571 (1976), *People v Ridgeway,* 74 Mich App 306; 253 NW2d 743 (1977), *People v Samuel Smith,* 85 Mich App 404, 410-411; 271 NW2d 252 (1978), *People v McGregor,* 45 Mich App 397, 398-399; 206 NW2d 218 (1973), *People v Gordon,* 60 Mich App 412, 417-418; 231 NW2d 409 (1975), *People v Fuller,* 395 Mich 451, 459-460; 236 NW2d 58 (1975) (T. G. KAVANAGH, C.J., dissenting), *People v Atley,* 392 Mich 298, 314-315; 220 NW2d 465 (1974), *People v Orsie,* 83 Mich App 42, 54-56; 268 NW2d 278 (1978) (R. M. MAHER, J., dissenting in part).

Those panels not requiring the prosecution to disprove every reasonable hypothesis consistent with defendant's innocence have subscribed to the view that circumstantial evidence is no less trustworthy and probative of guilt than direct evidence, and that the totality of the circumstances should be looked at in reviewing the evidence. The probative value of the circumstantial evidence is to be determined by the trier of fact. This line of cases allows logical inferences to support a conviction where the antecedent inference, drawn from the evidence introduced, is fair and reasonable and is not based on evidence that is uncertain, speculative, or raises merely a conjecture or possibility.

See, *People v Edgar,* 75 Mich App 467, 469-474; 255 NW2d 648 (1977), *People v Helcher,* 14 Mich App 386, 389-391; 165 NW2d 669 (1968), *People v Sherman Hall,* 77 Mich App 456, 463; 258 NW2d

517 (1977), *People v Ross,* 69 Mich App 705, 707-708; 245 NW2d 335 (1976), *People v Orsie,* 83 Mich App 42, 45-54; 268 NW2d 278 (1978), *People v Johnson,* 83 Mich App 1, 17-18; 268 NW2d 259 (1978), *People v Little,* 87 Mich App 50, 53-54; 273 NW2d 583 (1978), *People v Davidson,* 88 Mich App 276; 276 NW2d 580 (1979).

The apparent differences in approach may very well be a matter of semantics. In a criminal trial, a guilty verdict is returnable if there is evidence, credible and believed, that would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt. If the satisfying beyond a reasonable doubt criteria is met, should a verdict of guilty be set aside because it was necessary to base an inference on an inference, even though both were of great probative value? It is submitted that a general distrust of circumstantial evidence is not justified, and that, when courts engage in discussions of "direct" and "circumstantial" evidence and the permissible inferences to be drawn therefrom, the courts are really concerned with how compelling the inference is. If inferences drawn from circumstantial evidence are so compelling that the trier of fact has no reasonable doubt of defendant's guilt, that should be sufficient basis for a guilty verdict. If circumstantial evidence does not give rise to inferences of such a compelling nature as to overcome the reasonable doubt standard, then a guilty verdict could not be justified, not because the evidence was circumstantial or because of basing inferences on inferences, but rather, because of the prosecution's failure to meet its burden of proof. If so, it would seem to follow that if the evidence persuaded the trier of fact of a defendant's guilt beyond a reasonable doubt the prose-

cution's failure to specifically disprove an innocent hypothesis advanced by defendant would not result in the setting aside of a guilty verdict. It should be recognized that there can be hypotheses of innocence advanced by defendants that would be impossible to disprove by either direct or circumstantial evidence. To require the prosecution to do the impossible would be neither sound logic nor good law. It would appear that in order for a hypothesis of innocence to negate an otherwise supported finding of guilt the hypothesis must be of such a compelling nature that it creates a reasonable doubt on the part of the fact trier.

In this case, defendant did not testify or introduce any evidence in his own behalf. It should also be noted that it was Robinson's impeached testimony that placed defendant in another location at the time of the offense. It is clear that the trial court had the right to, and elected to, disbelieve that testimony. Thus, it can be argued that there was no credible testimony establishing the fact that defendant was not present and did not participate in the breaking and entering. It would appear that in this case we are not dealing with a hypothesis of innocence, but rather, with a presumption of innocence.

Since presence in, or control over, a vehicle in which the fruits of a crime are found is evidence of, and justifies an inference of, possession, *Ridgeway, supra,* 316, *Gordon, supra,* 418, the court could properly find constructive possession by defendant of the stolen checkbook and buzzard. The key issue is whether there is sufficient evidence, in addition to constructive possession, to establish an inference that defendant perpetrated a breaking and entering.

Of significance is the testimony and evidence

relating to the checkbook that was, without question, stolen from the Thompson residence. It is first noted that the checkbook was not found where Robinson testified he had placed it, but rather, it was found under the driver's seat of the patrol car, a location directly in front of where defendant was sitting, a location easily accessible to defendant but not to Robinson. It would certainly be logical to infer that, under the circumstances, it was placed there by the defendant because he in fact had possession of the checkbook following the breaking and entering or because of his guilty knowledge of the crime by reason of his involvement and participation therein. It is certain that either Robinson or the defendant secreted the checkbook where it was found. However, neither the testimony nor the evidence concerning the finding of the checkbook give rise to, or would substantiate, a reasonable inference that Robinson secreted the checkbook where it was found.

We find that the totality of the evidence as enumerated and considered by the trial judge affords a sufficient basis for a finding of defendant's guilt beyond a reasonable doubt.

Affirmed.