PEOPLE v BOOSE

Docket No. 52764. Submitted May 11, 1981, at Lansing.—Decided September 10, 1981.

Minnie Boose was convicted of conspiracy to commit murder and first-degree murder in Genesee Circuit Court, Harry B. McAra, J. The defendant appealed by leave granted, alleging that (1) the evidence was insufficient to enable the jury to find that the elements of the two offenses were proven beyond a reasonable doubt and (2) the trial court erred in permitting testimony of a witness who had violated the court's sequestration order. *Held:*

1. The evidence presented in this case gives rise to the compelling inference that the defendant did enter into an agreement with Henry Hurt and Clifford Kerse to murder her husband, that the participants had the specific intent that that agreement be carried out and that the defendant did aid and abet Hurt and Kerse in the commission of the murder. By proving its theory beyond a reasonable doubt, the prosecution negated every reasonable theory of innocence. The evidence adduced at trial which was most favorable to the prosecution was sufficient to support the convictions.

2. The trial court did not abuse its discretion in refusing to

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 608.
[2] 5 Am Jur 2d, Appeal and Error § 883.
[3] 16 Am Jur 2d, Conspiracy § 2.
[4] 40 Am Jur 2d, Homicide § 29.
[5] 16 Am Jur 2d, Conspiracy §§ 7, 36, 38.
[6, 8] 16 Am Jur 2d, Conspiracy § 36.
[7] 21 Am Jur 2d, Criminal Law § 167.
[9] 29 Am Jur 2d, Evidence § 161.
[10] 29 Am Jur 2d, Evidence § 163.
   30 Am Jur 2d, Evidence §§ 1091, 1125.
[11] 40 Am Jur 2d, Homicide §§ 44, 45, 53.
[12] 40 Am Jur 2d, Homicide § 263.
   Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.
[13] 40 Am Jur 2d, Homicide §§ 435-439.
[14] 75 Am Jur 2d, Trial § 63.
   Effect of witness' violation of order of exclusion. 14 ALR3d 16.

exclude the testimony of the sequestered witness. Defense counsel's cross-examination of the witness did not reveal that the defendant was prejudiced in any way by the witness's violation of the sequestration order. Even if this witness did hear any testimony during trial, it did not relate to matters about which he testified.

Affirmed.

1. CRIMINAL LAW — APPEAL — MOTION FOR NEW TRIAL.

A criminal defendant need not move for a new trial in the trial court to preserve on appeal the issue of whether the evidence was insufficient to support the verdict.

2. CRIMINAL LAW — APPEAL — SUFFICIENCY OF EVIDENCE.

The Court of Appeals must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt in determining whether there is sufficient evidence to support a conviction.

3. CONSPIRACY — CRIMINAL CONSPIRACY — STATUTES.

Criminal conspiracy is a mutual understanding or agreement between two or more persons, express or implied, to do or accomplish some criminal or unlawful act (MCL 750.157a; MSA 28.354[1]).

4. CONSPIRACY — CONSPIRACY TO MURDER.

It is necessary to prove that at least two persons intended to murder another to prove conspiracy to commit murder, and to establish such intent, there must be knowledge of the unlawful purpose of murder.

5. CONSPIRACY — CRIMINAL CONSPIRACY.

The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons; direct proof of agreement is not required, nor is it necessary that a formal agreement be proven, it is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact.

6. CONSPIRACY — CRIMINAL CONSPIRACY — INFERENCES.

The crime of conspiracy may be established by circumstantial evidence and may be based on inference.

7. CRIMINAL LAW — AIDERS AND ABETTORS.

A person aids and abets another to commit a crime where the

former takes conscious action to make the criminal venture succeed.

8. CONSPIRACY — CRIMINAL CONSPIRACY.

It is unlikely that any single fact taken in isolation could ever support the inference of an agreement necessary to find a criminal conspiracy; it is the composite of facts from which the jury is permitted to draw reasonable inferences relating to the missing elements that supports the finding of conspiracy.

9. EVIDENCE — INFERENCES.

An inference by the trier of fact should not be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility.

10. EVIDENCE — INFERENCES — CIRCUMSTANTIAL EVIDENCE.

Inferences drawn from circumstantial evidence that are so compelling that the trier of fact has no reasonable doubt of the defendant's guilt should be a sufficient basis for a guilty verdict and if circumstantial evidence does not give rise to inferences of such a compelling nature as to overcome the reasonable doubt standard, then a guilty verdict could not be justified, not because the evidence was circumstantial or because of basing inferences on inferences, but rather, because of the prosecution's failure to meet its burden of proof.

11. HOMICIDE — MURDER — STATUTES.

First-degree murder is distinguished from second-degree murder in that for a conviction for first-degree murder the prosecution must prove that the death was the willful result of the defendant's premeditated and deliberate intent to kill (MCL 750.316; MSA 28.548).

12. HOMICIDE — MURDER.

Neither premeditation nor deliberation, necessary elements for a first-degree murder conviction, need be established by direct evidence; the requisite state of mind of the accused can be inferred from all of the facts and circumstances.

13. HOMICIDE — MURDER — PREMEDITATION AND DELIBERATION.

The factors to be considered in deciding whether there is sufficient evidence for the jury to infer premeditation and deliberation in a murder trial are (1) the previous relation of the parties, (2) the defendant's action prior to the actual killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide.

14. WITNESSES — SEQUESTRATION — TESTIMONY.

    A trial court has discretion to exclude the testimony of a witness who has violated a sequestration order.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Bell & Hudson, P.C.,* for defendant on appeal.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

CYNAR, J. Although a timely claim of appeal was not filed, this matter is before us on a delayed application for appeal, which was granted.

Defendant was charged in a two-count complaint. In count I she was charged with conspiracy to commit murder in violation of MCL 750.157a; MSA 28.354(1), MCL 750.316; MSA 28.548, and in count II she was charged with first-degree murder in violation of MCL 750.316; MSA 28.548. She was convicted on both counts on November 20, 1979, after a jury trial. Defendant was sentenced to serve a life term in prison. We affirm defendant's convictions.

On the evening of June 9, 1979, Clarence Boose, Sr., was shot to death in the upstairs of his home at 316 Pierson Road, Flint. The deceased was the spouse of the defendant. Testimony of a neighbor, Nancy Cowens, indicated that she had been present in the Boose home at the time of the shooting. She went there to use the telephone. As she approached the Boose house, the defendant was getting out of a car which was parked in front of the

house. Defendant was accompanied by her 11-year-old mentally retarded daughter. As this was taking place, two men dressed in green approached the house from the opposite direction. These men were later identified by Cowens at police line-ups held on June 12, 1979, and June 13, 1979, as being Henry Hurt and Clifford Kerse. Cowens followed the defendant into the house and she was followed by the two men. After they entered the house, the defendant directed the two men to go upstairs. Mr. Boose was not present at that time.

After Cowens used the phone, she was offered a soft drink by defendant. Defendant then stated that she was going to another part of the house to bathe her daughter. Cowens remained in the kitchen. Shortly thereafter Mr. Boose came home, and when he entered the kitchen he asked Cowens where his wife was. Cowens told him that defendant was bathing their daughter in another room. Mr. Boose then went back outside. Defendant then entered the kitchen, and as she did so she leaned back toward the stairway located in the room from which she had entered and said, "Are you guys still up there". Cowens heard a response but she could not understand it.

Cowens testified that a short time later Mr. Boose came back into the house. Defendant asked him to go upstairs to change some lightbulbs. He went upstairs and came back with a sack containing some bulbs, took one out and went back upstairs. Cowens then heard several shots. Mr. Boose came running down the stairs with blood about his shoulder and told Cowens that he had been shot and asked her to call the police. He then ran outside. As Cowens picked up the phone, Hurt and Kerse entered the kitchen, each holding a gun. One of them pointed a gun at Cowens and told her

to put the phone down. They then went out the same door from which Mr. Boose had exited.

Cowens stated that defendant then entered the kitchen and asked Cowens what had happened. Cowens told her that her husband had been shot and asked defendant if she wanted Cowens to call the police. Defendant told Cowens that she would give her some "change" if she did not call the police. Defendant also told Cowens that she knew that the men who had shot her husband would be able to recognize Cowens.

Cowens testified that shortly thereafter she left the Boose house to return to her home located next door. When she got to her house, she saw a pool of blood on her porch and went back to the Boose house. She again asked defendant if she should call the police and again defendant told her that she would give her "some change" if she did not do so.

A few minutes later defendant told Cowens to call the police from a downstairs phone. Defendant then made several other phone calls from the phone located in the kitchen. After the police arrived, their investigation disclosed the body of Mr. Boose in the Cowens home. He had been shot a total of six times.

Defendant told an investigating officer that she did not know what had happened, for she had been in another room bathing her child when these events took place. Neither Cowens nor the defendant told the police of the presence of the two men. Cowens eventually did come forth with that information on June 11, 1979. She stated that she did not do so earlier because she was afraid.

There was testimony by Sheila Jones, another daughter of defendant, that several meetings had taken place between Hurt, Kerse and defendant.

Jones also testified that defendant had asked her on several occasions to find someone to kill the deceased. She stated that defendant had told her shortly after her first meeting with Hurt that Hurt had agreed to kill "Ronnie". Ronnie was the defendant's boyfriend. Jones testified that three days prior to the murder, defendant had asked her in the presence of Hurt and Kerse to take Hurt and Kerse to Detroit to get some guns.

On cross-examination, Jones admitted having been convicted of a felony. She also admitted that she had attempted to forge a check in the name of the defendant while the defendant was in jail on the present charges.

A defense witness testified that during the period of time that both defendant and Jones were in jail on these charges, Jones had passed the defendant a note which stated that if the defendant did not help her get out of jail, Jones would "make it bad for her".

Jones did not tell the police of these events until sometime in the fall of 1979. She testified that she did not do so earlier because she was confused and did not know whether she should tell. She stated that she finally decided to come forth because she had been "seeking the Lord".

Clarence Boose, Jr., son of the deceased and the defendant, testified that he had seen the defendant in the presence of Kerse and Hurt on at least three occasions during the week of the murder. He also said that the defendant asked him three days prior to the murder if he knew where she could get an unregistered handgun.

Prior to the presentation of evidence, the court had ordered that the witnesses be sequestered. On at least four occasions Clarence Boose, Jr., had entered the courtroom during the course of trial.

Officer Buszek stated that the entries involved no more than Boose sticking his head in the courtroom whereupon the officer whould point outside and Boose then went right out of the courtroom. Defendant moved that the witness be disqualified from testifying for having violated the sequestration order. The court ruled that defendant could bring the fact that the witness had violated the order out on cross-examination but did not order that the witness be precluded from testifying. The cross-examination relating to the witness's entry into the courtroom during trial was scant.

The remainder of the evidence presented dealing with the events leading up to and including the day of the murder are presented in greater detail in the discussion of the first issue.

*I. Was the evidence legally sufficient to support a conviction of either conspiracy to commit murder or first-degree murder?*

Defendant claims that the evidence was insufficient to enable the jury to find that the elements of the respective offenses were proven beyond a reasonable doubt. The people contend that this issue has not been properly preserved for appeal by a motion for a new trial. *People v Cage,* 83 Mich App 534; 269 NW2d 213 (1978), *People v Mattison,* 26 Mich App 453; 182 NW2d 604 (1970). *Cage* and *Mattison* both involve claims that the verdict was against the great weight of the evidence, not that the evidence was insufficient to support the verdict. Here, there is no claim relating to the great weight of the evidence. It was not necessary for the defendant to move for a new trial to preserve this issue for appeal.

With respect to the sufficiency issue, the controlling statutes are:

"Sec. 157a. Any person who conspires together with 1

or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:

"(a) except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,0000.00 may be imposed." MCL 750.157a; MSA 28.354(1).

"Sec. 316. All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." MCL 750.316; MSA 28.548.

In determining whether there is sufficient evidence to support a conviction, the Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Delongchamps,* 103 Mich App 151; 302 NW2d 626 (1981), *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

The evidence adduced at trial which was most favorable to the prosecution was sufficient to support the convictions.

Defendant's husband, Clarence Boose, Sr., was shot to death on June 9, 1979. Defendant was charged with having conspired with Henry Hurt and Clifford Kerse to murder the deceased and with aiding and abetting in the murder.

In January or February of 1979, defendant asked Sheila Jones, her daughter, if Jones could find someone to kill the deceased. At that time, Jones refused. On cross-examination it was brought out that defendant had made similar requests of Jones in 1974, 1975, and 1977. In May of 1979, defendant asked Jones if Jones would find someone to kill "Ronnie". Ronnie was the defendant's boyfriend. Defendant told Jones she would give her $500 to find someone to kill Ronnie. Approximately two weeks later, defendant asked Jones to tell Henry Hurt that she wished to talk to him. Hurt is Jones's cousin and had been staying with her since early May.

Henry Hurt and defendant did have a meeting approximately two weeks prior to the murder at defendant's home at 316 Pierson Road in Flint. The next day, defendant told Jones that Hurt had agreed to kill Ronnie. Approximately one week prior to the murder, Jones took Hurt to the bus station in Flint where they picked up a friend of Hurt. He was later identified as being Clifford Kerse by Jones at a line-up held on June 13, 1979.

On several occasions during the week of the murder, Clarence Boose, Jr., saw the defendant speaking with Hurt and Kerse at her home at 316 Pierson. Three days prior to the murder, defendant asked her son if he knew where she could find an unregistered handgun.

Two or three days prior to the murder, defendant asked Jones, in the presence of Hurt and Kerse, to take Hurt and Kerse to Detroit to get some guns. Jones did so. During the trip to Detroit, Hurt showed Jones a post card on which the name of "Walli's Motel" appeared. Defendant's name appeared on the guest register at the same motel. This motel was located a few blocks from the defendant's home.

From June 4, 1979, until the evening of June 8, 1979, the deceased had been out of the state with a woman by the name of Mary Tedford. The deceased had been dating Tedford since 1974. Approximately three months prior to the murder, Tedford had begun to collect rent owed the deceased from several of his tenants. After the murder, the defendant told Sergeant Ronald Ignash, an investigating officer of the Flint Police Department, that on June 8, 1979, she had gone to a lawyer's officer in an effort to put a "lien" on some property owned by her and the deceased to "prevent a lady from collecting rent". She stated that it did not bother her that her husband was going out with another woman but it did bother her that this woman might be getting money that belonged to defendant.

Tedford testified that at approximately 1 a.m. on the morning of the murder defendant had called Tedford's home and asked for Tedford. Tedford told defendant that she was not at home. At approximately 6:30 p.m. that same day, defendant drove slowly past Tedford's home and looked at the house.

On the afternoon of the killing, defendant was seen by Roderick Johnson in the parking lot of a school located near her home. He said that she was driving a brown Cadillac with a yellow vinyl top. At trial, Sergeant Robert Atkinson testified that defendant is a registered owner of a brown Cadillac with a brown vinyl top. Johnson testified that defendant was in the company of two black males, both dressed in green jump suits. Johnson later identified Clifford Kerse in a line-up held on June 13, 1979, as one of these two men. The two men got out of the car and went to a pile of leaves located nearby and each pulled out a bag that was

approximately six to eight inches in length. They both returned to the car, whereupon defendant drove the car a short distance forward and dropped off the two men. She then departed.

At approximately 9:15 p.m. on June 9, 1979, Nancy Cowens, who lived next door to the defendant at 226 Pierson Road, went to the defendant's home and asked if she could use the defendant's telephone. Defendant was getting out of her car as Cowens approached. At the same time, Cowens saw two black men dressed in green approaching the house from the other direction. These men were later identified by Cowens at police line-ups held on June 12, 1979, and June 13, 1979, as being Henry Hurt and Clifford Kerse. Cowens testified that she followed the defendant into the house and that she was followed by the two men. Defendant then told the two men to go upstairs. Mr. Boose was not present at that time. The door through which they entered was a side door located near the kitchen. Cowens remained in the kitchen to use the telephone while the defendant went to another part of the home. Shortly thereafter, after Cowens had completed her use of the telephone, the deceased entered the home. He asked Cowens where his wife was and then went back outside. Defendant then came into the kitchen, and as she came through the doorway she leaned back toward the stairs and said, "Are you guys up there". Cowens heard some response but could not understand it. Shortly thereafter, the deceased reappeared and was asked by the defendant to change a lightbulb in the attic. He went up to the attic and came back with a sack full of lightbulbs. He took one out and went back upstairs. Cowens then heard several shots. The deceased came running down the stairs with blood about his shoulder and

said, "Nancy, call the police, somebody is trying to kill me". He then ran out of the house.

Cowens testified that as she picked up the phone to call the police Hurt and Kerse entered the room with guns in their hands. One of them pointed a gun at her and told her to put the phone down. She did so. The two men then left the house. Defendant came into the room and asked Cowens what had happened. Cowens told her that her husband had been shot and asked defendant if she wanted Cowens to call the police. Defendant told Cowens that if she did not call the police right away the defendant would give her "a little piece of change". Cowens walked out of the house and over to her house where she saw blood on her front porch. She then went back to the Boose house and again asked the defendant if she should call the police. Defendant again responded by telling her that she would give her "a piece of change" if she did not call the police. A few minutes later, defendant told Cowens to go down to the phone in the basement and call the police. As Cowens went to the basement to do so, defendant made several other telephone calls.

Neither Cowens nor defendant told the police of the presence of the two men. Cowens did tell the police on June 11, 1979. She testified that she did not do so earlier because she was afraid. Defendant had told Cowens that Hurt and Kerse knew that Cowens could identify them.

Narriss Washington, a cousin of Henry Hurt, testified that on the morning of June 10, 1979, Hurt and another man, whom she later identified at a police line-up held on June 13, 1979, as being Clifford Kerse, were at her apartment and threw several items of green clothing into her garbage. Those items were later retrieved by the police and

identified at trial by Roderick Johnson as being the clothing he saw worn by the two men that he had seen in the school parking lot on June 9, 1979. The items were also identified at trial by Nancy Cowens as being the clothing that she saw worn by the two men she had seen at the Boose home on the night of June 9, 1979.

Police Officer Charles Weston testified that he was called to the scene at approximately 9:55 p.m. on June 9, 1979. His investigation disclosed a trail of blood leading from the upstairs portion of the house located at 216 Pierson Road to the house located at 226 Pierson Road, where a body, later identified as Clarence Boose, Sr., was found. Dr. David Congdon, associate pathologist at Hurley Medical Center in Flint, testified that his examination of the body revealed that the victim had been shot six times.

Criminal conspiracy is a mutual understanding or agreement between two or more persons, express or implied, to do or accomplish some criminal or unlawful act. To prove conspiracy to commit murder, it is also necessary to prove that at least two persons intended to murder another. To establish such intent, there must be knowledge of the unlawful purpose of murder. *People v Hintz,* 69 Mich App 207, 217-218; 244 NW2d 414 (1976). In the present case there was no direct evidence concerning the agreement between the defendant and Henry Hurt and Clifford Kerse. In *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974), the Supreme Court stated:

"The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient

if the circumstances, acts, and conduct of the parties establish an agreement in fact.

"Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, and may be based on inference." (Citations omitted.)

There was no direct evidence relating to the content of any conversation between defendant and Henry Hurt and Clifford Kerse other than the statement by defendant to Sheila Jones the day after defendant's meeting with Hurt that Hurt had agreed to kill "Ronnie". However, the evidence relating to the conduct of the participants could have led a rational trier of fact to find beyond a reasonable doubt that an agreement had been made to murder Clarence Boose, Sr. Defendant had numerous contacts with Hurt and Kerse. She requested her son to find an unregistered gun. In the presence of Hurt and Kerse she requested Sheila Jones to take Hurt and Kerse to get "some guns". Hurt and Kerse did in fact accompany Jones to Detroit. On the way to Detroit, Hurt showed Jones a post card from Walli's Motel. Defendant's name appeared on the guest register at that same motel. Defendant told Jones two weeks prior to the murder that Hurt had agreed to kill someone. Defendant was seen with Hurt and Kerse on the afternoon of the murder, and on the evening of the murder she directed those two men to the upstairs of her home, where the shooting actually took place.

Defendant contends that no inference of guilty participation can be drawn merely from the defendant's association with Hurt and Kerse. The above evidence demonstrates more than mere association. It clearly supports a finding that defendant had entered into an agreement with Hurt and Kerse to murder defendant's husband.

The evidence could also have led a rational trier of fact to conclude that the participants had the requisite specific intent to murder Clarence Boose, Sr. Jones testified that three months prior to the murder defendant had asked her to find someone to kill the deceased. On cross-examination, Jones testified that defendant had made the same request of her on at least three other occasions. Defendant's actions as to the request for the guns, combined with her actions in directing Hurt and Kerse upstairs and in sending the victim upstairs to "change a lightbulb" and in twice telling Nancy Cowens that she would give her "change" if she did not call the police, could lead a rational trier of fact to conclude that defendant had knowledge of the unlawful purpose to murder. *Hintz, supra.*

Defendant next contends that the evidence was insufficient to enable a jury to find that defendant aided and abetted in the murder of her husband.

It has been held that one aids and abets another to commit a crime where the former takes conscious action to make the criminal venture succeed. *People v Wright (On Remand)*, 99 Mich App 801; 298 NW2d 857 (1980). If the Court concludes that sufficient evidence existed to enable the jury to find the existence of conspiracy, it is clear that it was also permissible for the jury to find that defendant aided and abetted in the commission of the crime. To establish the existence of the conspiracy it was necessary for the prosecution to show, in addition to the existence of the conspiratorial agreement, the existence of the specific intent to commit murder. To prove such intent it was necessary to establish that defendant had knowledge of the criminal purpose of murder. *Hintz, supra.* If the jury believed that defendant had that specific intent, it could also have ration-

ally found that defendant's acts of requesting Jones to drive Hurt and Kerse to Detroit to get guns, of directing Hurt and Kerse to wait upstairs, of sending the victim upstairs where she knew Hurt and Kerse awaited him, and of offering Nancy Cowens "some change" if she did not call the police, were all conscious acts of defendant to make the criminal venture succeed. *Wright, supra.*

Defendant contends that the jury's finding of guilt necessarily involved a pyramiding of inferences upon inferences proscribed by *Atley, supra.* In her brief, the defendant has attempted to isolate each fact presented to the jury and argue that such fact could not support a particular inference. Taken in isolation, it is unlikely that any single fact could ever support the inference of an agreement necessary to find a conspiracy. It is the composite of those facts from which the jury is permitted to draw reasonable inferences relating to the missing elements. In *People v Orsie,* 83 Mich App 42; 268 NW2d 278 (1978), this Court held that what is actually meant by the statement that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility. The evidence upon which the inferences were drawn is not speculative. It is direct evidence which could have led a rational juror to conclude that all of the elements of these offenses were proven beyond a reasonable doubt.

Defendant next contends that where the evidence is circumstantial, it is the burden of the prosecution to negate every reasonable hypothesis consistent with the defendant's innocence. In *People v Williams,* 94 Mich App 406, 416-417; 288 NW2d 638 (1979), this Court stated:

"If inferences drawn from circumstantial evidence are so compelling that the trier of fact has no reasonable doubt of defendant's guilt, that should be sufficient basis for a guilty verdict. If circumstantial evidence does not give rise to inferences of such a compelling nature as to overcome the reasonable doubt standard, then a guilty verdict could not be justified, not because the evidence was circumstantial or because of basing inferences on inferences, but rather, because of the prosecution's failure to meet its burden of proof. If so, it would seem to follow that if the evidence persuaded the trier of fact of a defendant's guilt beyond a reasonable doubt the prosecution's failure to specifically disprove an innocent hypothesis advanced by defendant would not result in the setting aside of a guilty verdict. It should be recognized that there can be hypotheses of innocence advanced by defendants that would be impossible to disprove by either direct or circumstantial evidence. To require the prosecution to do the impossible would be neither sound logic nor good law. It would appear that in order for a hypothesis of innocence to negate an otherwise supported finding of guilt the hypothesis must be of such a compelling nature that it creates a reasonable doubt on the part of the fact trier."

The evidence presented in this case gives rise to the compelling inference that defendant did enter into an agreement with Henry Hurt and Clifford Kerse to murder her husband, that the participants had the specific intent that that agreement be carried out and that defendant did aid and abet Hurt and Kerse in the commission of the murder.

Defendant's argument that Hurt and Kerse merely entered the residence of defendant and the deceased to meet with the deceased on some business is not supported by evidence sufficient to mandate a reasonable doubt in the mind of the trier of fact. The evidence is to the contrary, and by proving its theory beyond a reasonable doubt,

the prosecution has, in effect, negated every reasonable theory of innocence.

Defendant's final claim relating to the sufficiency of the evidence deals with the elements of premeditation and deliberation.

First-degree murder is distinguished from second-degree murder, MCL 750.317; MSA 28.549, in that the prosecution must prove that the death was the willful result of a premeditated, deliberate intent to kill. Neither premeditation nor deliberation need be established by direct evidence. The requisite state of mind can be inferred from all of the facts and circumstances. *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975).

The factors to be considered in deciding whether there was sufficient evidence from which the jury could infer premeditation and deliberation are: (1) the previous relation of the parties; (2) the defendant's action prior to the actual killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. *People v Johnson,* 93 Mich App 667; 287 NW2d 311 (1979).

With respect to the first factor, the evidence at trial taken in the light most favorable to the prosecution, *Hampton, supra,* shows that the deceased was involved in an extramarital relationship and that the woman he was dating had begun collecting rent from tenants of the deceased approximately three months prior to the murder. Defendant told a police officer after the murder that she did not mind the fact that her husband had been seeing another woman but it did bother her that the other woman was getting money which the defendant believed belonged to her. From these facts the jury could rationally infer that defendant had a motive to kill her husband.

With regard to the second factor, on several

occasions prior to the murder defendant had told her daughter that she wanted to kill her husband. She had been seen in the presence of the actual killers on many occasions prior to the night of the murder. She had asked her daughter to take the killers to Detroit to "get some guns" several days prior to the murder. Finally, she was seen in the presence of the killers on the afternoon of the murder.

With regard to the third factor, defendant directed the killers to the upstairs portion of her house shortly before the murder occurred. When her husband came home, she directed him upstairs, ostensibly to replace a lightbulb. While there is no evidence to suggest that defendant actually shot her husband, it was established that both Hurt and Kerse had a gun and that the deceased was shot a total of six times.

Finally, defendant's conduct following the murder is consistent with premeditation and deliberation. She twice offered to pay her neighbor, Nancy Cowens, some money if the neighbor agreed not to call the police.

On the basis of all this, the jury could properly have inferred premeditation and deliberation.

*II. Did the trial court err in permitting the testimony of a witness who had violated the court's sequestration order?*

Prior to presentation of any evidence in the case, the court ordered the witnesses sequestered. Clarence Boose, Jr., violated that order on at least four occasions. Defendant moved that he be precluded from testifying. The court ruled that defendant could inquire into the matter on cross-examination, but did not order that the witness be precluded from testifying.

Whether to exclude a witness who has violated a

sequestration order from testifying is within the trial court's discretion. *People v Dickerson,* 62 Mich App 457; 233 NW2d 612 (1975).

Officer Buszek stated that the witness's appearances in the courtroom were very brief. In any event, the testimony of this witness related primarily to events which were not the subject of any other testimony. He testified that he had seen defendant in the presence of Hurt and Kerse at defendant's home on several occasions during the week of the murder and that he was the only person present other than those three on those occasions. He also testified that defendant had asked him if he knew where she could get an unregistered gun. No other witness testified as to these events. Consequently, even if this witness did hear any other testimony during the trial, it did not relate to matters about which he testified.

Defense counsel was given an opportunity to cross-examine the witness on this matter. His cross-examination does not reveal that defendant has been prejudiced in any way by the witness's violation of the sequestration order.

The court did not abuse its discretion in refusing to exclude the testimony of the witness.

Affirmed.