PEOPLE v FISHER

Docket No. 111264. Submitted October 1, 1991, at Grand Rapids. Decided March 16, 1992, at 9:15 A.M. Leave to appeal sought.

Jerry W. Fisher was convicted by a jury in the Van Buren Circuit Court, Meyer Warshawsky, J., of involuntary manslaughter in connection with the disappearance of his estranged wife. He appealed, claiming that the court should have directed a verdict of not guilty at the close of the prosecutor's proofs because there was insufficient evidence for conviction, and that he was unfairly prejudiced by some of the prosecutor's remarks during closing argument.

The Court of Appeals *held:*

1. Neither the body of a missing person nor evidence of the method used to produce the death of that person is required to establish the corpus delicti of homicide or to sustain a conviction of murder or manslaughter. However, a conviction of murder or manslaughter may not be sustained where, as in this case, there was no admission of guilt by the defendant, no evidence indicating a homicide, and no witness to any part of the killing or to the disposal of the victim's body. The court erred in denying the defendant's motion for a directed verdict.

2. The prosecutor's use during closing argument of evidence of the defendant's prior bad acts involving violence contravened MRE 404(b) to the extent he argued that the defendant must have acted in conformity with his violent character in causing his wife's death. The argument was not supported by any evidence.

Reversed and remanded for entry of a directed verdict of not guilty.

HOMICIDE — EVIDENCE — MISSING BODY.

A conviction of murder or manslaughter for the death of a victim whose body is missing may not be sustained without an admission of guilt by the defendant, evidence indicating a homicide, or a witness to some part of the killing or to the disposal of the victim's body.

REFERENCES

Am Jur 2d, Homicide §§ 284, 432, 433, 452, 455.
See the Index to Annotations under Corpus Delicti.

State Appellate Defender (by *Fred E. Bell*), for the defendant on appeal.

Before: DANHOF, C.J., and SULLIVAN and NEFF, JJ.

SULLIVAN, J. Joyce Fisher disappeared on April 15, 1978. On May 27, 1988, a jury convicted her estranged husband, defendant Jerry Wayne Fisher, of involuntary manslaughter, MCL 750.321; MSA 28.553. No witnesses to Joyce Fisher's death have come forward, and her body has never been found. Defendant appeals his conviction on several grounds. We reverse the conviction because the evidence was insufficient to submit the case to the jury and the trial court erred in denying defendant's motion for a directed verdict at the close of the prosecution's case.

We initially note that the prosecutor failed to file a brief in this appeal and failed to appear for oral argument. We are disturbed by this apparent indifference and abandonment of a case this serious after he elected to proceed with marginal evidence to a fourteen-day trial by jury that generated a great deal of public interest and media coverage.

Defendant claims error in the denial of his motion for a directed verdict, in the admission of evidence of prior and subsequent bad acts, in the admission of hearsay evidence of Joyce's fear of defendant, and in the allowance of improper remarks during the prosecutor's closing argument. We agree that the evidence was insufficient and that the prosecutor overstepped his bounds. Some of the evidence complained of was properly admitted for limited purposes, then improperly argued during the prosecutor's closing argument.

In September 1987, defendant was charged with

open murder in connection with the disappearance of his wife more than nine years earlier. In April 1978, defendant and Joyce Fisher were in the process of a divorce following a stormy two-year marriage, marked by Joyce's reports to friends and family of frequent beatings by defendant. Joyce testified at a hearing in connection with the divorce that defendant had threatened to kill her in mid-January 1978, approximately three months before she disappeared. Joyce and their child then moved to Chicago to live with Joyce's parents.

On April 14, 1978, Joyce went to her parents' cottage at Indian Lake for a visit between defendant and their daughter scheduled for April 16. On the morning of April 15, witnesses saw Joyce and defendant having a friendly breakfast at a local drugstore. Later that day, Joyce left with defendant in his car to have a vehicle title transfer notarized. Defendant told investigators that, en route, Joyce discovered that they had the wrong title, so they returned to where Joyce had left her car. No witnesses could either refute or support that claim. Several witnesses testified that Joyce has not been seen or heard from since that time. There was also substantial testimony regarding her reliability, her long- and short-term plans, her devotion to her child, and her close relationship with family and friends. This testimony gave rise to a strong inference that she is dead.

At the close of the prosecution's case, defendant moved for a directed verdict, arguing that the evidence was insufficient to submit the case to the jury on any theory, particularly on a theory of first-degree murder because there was no evidence of premeditation or deliberation. The court denied the motion and instructed the jury with regard to first- and second-degree murder and, over defendant's objection, with regard to voluntary and

involuntary manslaughter. The jury found defendant guilty of involuntary manslaughter.

Due process requires that the prosecutor introduce sufficient evidence that could justify a trier of fact in concluding that defendant is guilty beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). The prosecutor in this case failed to introduce sufficient evidence to support submitting any of the homicide theories to the jury.

The prosecutor offered no evidence of an act that resulted in Joyce Fisher's death. A federal appellate court recently held that "neither the body of the missing person nor evidence of the method used to produce death is required to establish the corpus delicti or to sustain a murder conviction." *Virgin Islands v Harris,* 938 F2d 401, 415 (CA 3, 1991). In *Harris,* even though the court expressed its holding broadly, the facts included several admissions by the defendant and physical evidence, including bloodstains. This Court has held that the victim's body is not necessary to establish the corpus delicti of homicide. *People v Brasic,* 171 Mich App 222, 227; 429 NW2d 860 (1988); *People v Modelski,* 164 Mich App 337, 342; 416 NW2d 708 (1987). In each of those cases, the defendant either admitted or confessed to the killing. We have found no reported Michigan decisions involving a missing body where there was no direct admission, no physical evidence, and no witness to some part of the killing or the disposal of the body.

The court in *Harris,* pp 413-415, ns 12-14, surveyed "missing body" homicide cases. That survey uncovered only one case upholding a conviction without an admission by the defendant or some physical evidence or a witness to some part of the killing or concealment of the body, *People v Scott,* 176 Cal App 2d 458; 1 Cal Rptr 600 (1959). The California court, relying on two Commonwealth of

Nations cases,[1] held that there was sufficient evidence to support the conviction. Much of the case concerned circumstantial evidence of the missing person's death. The court also held that whether the defendant knew that his wife was dead was a question of fact susceptible of proof by circumstantial evidence. *Id.,* p 496. Finding a chain of such evidence in the record, the court affirmed the conviction.

Even if we were to accept that circumstantial proof tending to show that a defendant knows that a missing person is dead is sufficient to support conviction for that death, we find no such evidence in this record. One witness testified vaguely that a year or two after Joyce's disappearance, while defendant was drinking one evening, he said his wife was gone "and nobody can find her" or "nobody is going to find her or something to that effect." Defendant remarried, but not until more than eight years had passed since Joyce disappeared. He lied to his second wife about the circumstances surrounding the end of his first marriage, but not in any way that reasonably can be construed as an admission that he knew Joyce was dead. Defendant told other people in the years following her disappearance either that he was divorced or that his wife was institutionalized. There was no proof of any of the circumstances present in *Scott* that led that court to conclude: "Every act, every statement of [the defendant] after the disappearance of his wife was consistent only with knowledge that [she] was dead." *Id.,* p 499.

In this case, there was no physical evidence, such as bloodstains or a weapon, linking defendant to Joyce's death. He did not admit that he killed

---

[1] *The King v Horry* [1952], NZLR 111; *Regina v Onufrejczyk* [1955], 1 QB 388.

his wife, although the prosecutor offered an equivocal statement. One police officer testified that he suggested a possible sequence of events two days after Joyce's disappearance while questioning defendant. Defendant replied, "It's not like it seems, it didn't happen that way, I didn't mean for it to happen that way." This statement first appeared in a report prepared in April 1987; neither of the officers present included it in the original reports. That testimony, even if reviewed in the light most favorable to the prosecutor, is insufficient to support defendant's conviction.

The prosecutor presented ample evidence of defendant's motive and opportunity to kill his wife. Motive and opportunity, while relevant, are not elements of any crime. See *People v Oliphant,* 399 Mich 472, 489; 250 NW2d 443 (1976). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of a crime. *People v Reddick,* 187 Mich App 547, 551; 468 NW2d 278 (1991). Inferences, however, may not be based on evidence that is uncertain or speculative or that raises merely a conjecture or possibility. *People v Orsie,* 83 Mich App 42, 47; 268 NW2d 278 (1978). The evidence in this case did not rise above the level of conjecture. It was not sufficient to support the conviction.

The prosecutor compounded the error with his grossly improper closing argument. Because insufficient evidence mandates reversal, we need not address the evidentiary issues raised by defendant; some of those evidentiary questions, however, are pertinent to our analysis. Those issues primarily involved evidence of prior and subsequent bad acts of defendant, his previous assaults of his wife and subsequent acts of violence against others. The prior acts of marital violence were admissible to

show defendant's motive and the relationship between defendant and his wife. *People v Morris,* 139 Mich App 550, 557; 362 NW2d 830 (1984); 1 Wharton, Criminal Evidence (13th ed, Torcia rev) § 179, pp 335-336. Evidence of prior bad acts is never admissible to show a defendant's character or to show that he acted in conformity with that character. MRE 404(b).

Defendant's supposed violent character and his presumed conformity with that character in the disappearance of his wife was the central theme of the prosecutor's closing argument. He repeatedly referred to defendant's "troubled personality" and "sick mind," compared defendant with a "little child" who never grew up, and concluded that defendant's aggressiveness became murderous. This line of argument culminated in some particularly objectionable (although not objected to) remarks. The prosecutor recounted a particularly brutal prior incident during which defendant allegedly assaulted his wife, and stated that such activity concluded with defendant "endangering her life and finally taking her life." The prosecutor then argued that the jury should "find that as relevant evidence . . . as far as the likelihood as [sic] what happened, as far as the facts of what happened on April the 15th." Shortly after that, the prosecutor, after speculating about what might have triggered an attack (including an implication of attempted rape), suggested that defendant, "for whatever reason pushed himself to the edge and as he had done so often in the past, snapped and went into a rage and struck out and assaulted and killed Joy Fisher." Near the end of his concluding remarks, the prosecutor said:

> The other thing is, people generally don't die from one blow. And people that commit murder are not medical people. If someone is hit, is there evidence that at that point in time that they are

dead? There would have to be further steps taken. It would be inconsistent that someone is going to die accidentally and then be disposed of in some manner so that the body would never be found.

As I indicated before, the body itself through forensic evidence that would be available, the experts looking at a body could tell us a great deal. And I would suggest that Jerry Fisher didn't want to give us that opportunity, because it would show consistent behavior with the past where it wasn't one blow. Well, where it was a well thought out situation of tying someone up or whatever precisely happened.

Defendant has raised other objections to the prosecutor's closing argument, some of which are well-taken. We highlight these excerpts merely to show that there was no evidence in this case. Defendant was convicted on the basis of speculation and innuendo. The prosecutor made up a theory from no evidence whatsoever. At an earlier point in the argument, he acknowledged that it was impossible to determine if Joyce had been shot, stabbed, strangled or struck, yet he went on to argue not only that defendant had hit her, but that he had hit her more than once. A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence in the case. *People v Dinsmore,* 103 Mich App 660, 679; 303 NW2d 857 (1981). The argument here was not only without foundation in the evidence, it was based solely on improper use of the evidence of prior bad acts: defendant had hit his wife before, so he probably hit her on April 15, 1978, this time killing her.

This argument in itself mandates a new trial. More significantly, it demonstrates the lack of evidence to support the prosecutor's case. The trial court should have granted defendant's motion for a directed verdict.

Reversed and remanded for entry of a directed verdict of not guilty. We do not retain jurisdiction.