# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACKSON FREDERICK KELLY,

Defendant-Appellant.

UNPUBLISHED
May 12, 2015

No. 320450
Clinton Circuit Court
LC No. 13-009171-FH

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Defendant appeals his jury conviction of third-degree home invasion, MCL 750.110a(4). The court sentenced defendant to serve two years' probation with 210 days' jail incarceration, and we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a home invasion that took place in the City of DeWitt in the early morning hours of July 20, 2013. The owner of the home, Trina Day, an ex-girlfriend of defendant, was not home during the break-in. Day testified that defendant was at the residence the preceding day and left driving a pickup truck, and defendant called her three times that evening. The first was amicable, and Day and defendant discussed the possibility of resuming their intimate relationship. The second and third calls were less amicable, as defendant wanted to resume romantic relations immediately, but Day, believing that defendant was "tipsy," insisted on delaying further discussion of the subject until defendant was sober. Day added that, during the second and third calls, defendant said some "mean things," spoke in an angry tone, and hung up on her.

Later that night, around 3:15 a.m., a gold Chevy Silverado pickup truck with a fiberglass bed cap was seen driving from the front lawn of Day's residence and away from the scene sometime after the break-in occurred. Shortly thereafter, a City of DeWitt police officer, John Drolett, spotted a truck, matching the description of the truck that had left Day's house, parked in a nearby neighborhood outside of Steven Karshner's house. Defendant, a friend of Karshner, had arrived at Karshner's house in the truck. Defendant was taken into custody; the officer described him as obviously intoxicated, "loud and boisterous," and said he refused to answer any questions. Drolett testified that the truck appeared to have come from the general direction of Day's house, although he admitted that it was possible the truck had come from the Lansing area.

-1-

No witness actually saw the break-in occur, or saw defendant at the residence around the time of the incident.

At trial, the prosecution planned to call Karshner as a witness. Karshner was subpoenaed; when he failed to appear at trial, the trial court authorized a bench warrant and declared a short break to give the witness more time to appear. Police officers went to Karshner's home over the break but did not locate him. The prosecution sought to introduce Karshner's preliminary examination testimony at trial. Defense counsel objected, and stated to the trial court that she had informed the prosecuting attorney the week before that Karshner might be absent. Specifically, she stated that defendant had heard that Karshner was taking his family to Disney World at the time of trial. The trial court determined that the subpoena satisfied the prosecution's duty of due diligence, and so denied defendant's request to instruct the jury that it might infer that the missing witness's testimony would have been unfavorable to the prosecution's case. See M Crim JI 5.12. Over a defense objection, Karshner's preliminary examination testimony was read into the record.

Karshner testified at the preliminary examination that he lived on Appletree Lane in DeWitt Township, and was friends with defendant. According to Karshner, he told the police on the night of the incident that defendant had just come from his ex-girlfriend's house. On cross-examination, Karshner explained that he had told this to the police because defendant had said something about having had sex with her. Karshner had assumed that this meant that defendant had just come from there, but acknowledged that it was possible that defendant had been referring to a point in time earlier in the day, and that Karshner did not in fact know the time frame during which defendant was actually at Day's home.

The jury convicted defendant as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant says that there is insufficient evidence to support his conviction. This Court reviews de novo a claim of insufficient evidence. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In doing so, this Court must view the evidence in the light most favorable to the prosecution to determine if the fact-finder could conclude that the essential elements of the crime were proved beyond a reasonable doubt. See *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.110a(4) provides that a person is guilty of third-degree home invasion if he or she

[b]reaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor.

Defendant does not dispute that a home invasion occurred. Rather, he argues that the prosecution failed adequately to prove that he was the person responsible for the offense, the

jury's contrary conclusion notwithstanding. Defendant relies on *People v Fisher*, 193 Mich App 284; 483 NW2d 452 (1992), which states that circumstantial evidence may prove the elements of a crime, but that inferences may not be based on evidence that is uncertain or speculative, or that otherwise offers mere conjecture. *Id*. at 289. *Fisher* concerned a person who disappeared without explanation. *Id*. at 287. The prosecution introduced evidence of the defendant's motive and opportunity, but had no way of actually tying the accused to the disappearance, or even showing that the disappearance resulted from any crime at all. *Id*. at 287.

Here, by contrast, the inference that defendant was responsible for the crime arises largely from witness accounts of events leading up to, and immediately after, the break-in. The prosecution presented evidence not only of defendant's motive (anger at his ex-girlfriend) and opportunity to commit the crime, but also that the victim's home was in fact criminally invaded, that a truck fitting the description of defendant's truck was seen leaving the scene, and that defendant and his truck were found nearby shortly afterward. These evidentiary developments supported the prosecution's theory; unlike *Fisher*, the evidence here did not merely relate to a potential motive for defendant, but to the actual elements of the crime and defendant's identity as the perpetrator. *Id*. Although the evidence was entirely circumstantial, *Fisher* itself reiterated that "[c]ircumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of a crime." *Id*. at 289.

Therefore we reject defendant's challenge to the sufficiency of the evidence.

## III. MISSING WITNESS INSTRUCTION

Defendant contends that the trial court abused its discretion when it refused the defense's request to include M Crim JI 5.12,[1] concerning the prosecution's failure to produce a witness, among its jury instructions. Jury instructions that involve questions of law are reviewed de novo, but a trial court's determination whether an instruction is applicable to the facts of a case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). We also "review a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion." *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2008).

M Crim JI 5.12 states, in relevant part, as follows: "[State name of witness] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." The trial court

---

[1] At the time of trial, the version of this instruction was referred to as CJI2d 5.12. On October 30, 2013, our Supreme Court issued Administrative Order 2013-13, which among other things issued new Michigan Model Criminal Jury Instructions. Defendant's trial took place before the promulgation of these new instructions. The instruction referenced here from the Criminal Jury Instructions Second Edition (CJI2d) corresponds to M Crim JI 5.12. The substance of the instruction has not changed.

declined to provide this instruction because it concluded that the prosecution had exercised due diligence to produce Karshner at trial. Defendant argues that the trial court erred, because the prosecution had reason to know that the witness had plans that would take him out of town at the time of trial. We disagree.

"[I]n every instance, the propriety of reading [M Crim JI] 5.12 will depend on the specific facts of that case." *People v Perez*, 469 Mich 415, 420-21; 670 NW2d 655 (2003). Due diligence is the attempt to do everything reasonable, not necessarily everything possible, to obtain the presence of a witness. *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). We hold that the trial court did not choose an unprincipled outcome by declining to hold that mere rumors that the witness had notions of going out of town obligated the prosecution to expend efforts to secure that witness beyond seeing that a subpoena was issued and served, securing a bench warrant, and sending police to Karshner's house to attempt to locate him when he failed to appear. See *Kahley*, 277 Mich App at 184; *Cummings*, 171 Mich App at 585.

Further, were we to hold there was an error in the trial court's due diligence determination, Karshner's previous testimony, including direct and cross-examination, was read at trial. Defendant offers only speculation that Karshner's failure to appear in person, or the trial court's failure to give the missing witness instruction, prejudiced his case in light of the fact that Karshner's early testimony was admitted, and that Karshner acknowledged during that testimony that he was uncertain as to when defendant had been at his ex- girlfriend's home. See *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010) ("The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice."). Thus, were we to find the trial court's failure to give the missing witness instruction was an abuse of discretion, we would find the error harmless.

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray