# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA ROBERT WITKOWSKI,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323706
Manistee Circuit Court
LC No. 13-004306-FC

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of one count of second-degree child abuse, MCL 750.136b(3). The circuit court sentenced defendant to serve 71 months to 10 years in prison, with credit for 357 days served. We affirm defendant's conviction, however remand for resentencing.

## I. FACTS

Defendant shared a home in Manistee with the victim's mother, A.S., and her three children, including the victim, E.S. E.S. was two and a half years old at the time of the abuse. A.S. testified that on the morning of December 17, 2012, E.S. appeared to be healthy and feeling well. A.S. had left E.S. with defendant when she walked her two older children to the school bus stop, and testified that E.S. was crying when she returned home. However, A.S. said that this was not abnormal behavior for E.S. because she preferred to be with her mother at all times.

A.S. testified that after she returned home, she, defendant, and E.S. ran several errands together. A.S. said E.S. "ran to the van" and helped "buckle her car seat and she was fine." Defendant made stops at the bank where A.S. and E.S. waited for him in the van and were dancing to music, and then went to the local courthouse where A.S. and E.S. again stayed in the van while defendant ran inside. Next, they went to the local office of the Department of Human Services (DHS), where A.S. realized she had forgotten paperwork that she needed for her DHS appointment. A.S. sent defendant home to get the documents, along with E.S. A.S. estimated that defendant was gone for 35-45 minutes. When defendant returned, he met A.S. in the lobby of the DHS office to give her the documents, leaving E.S. alone in the vehicle. Defendant testified that he was in the DHS office and away from E.S. for about two to three minutes while meeting with A.S, before returning to the van and remaining there for the duration of A.S.'s appointment. According to A.S., when she left the DHS office following her appointment, she

-1-

saw defendant crouched over E.S. in the back of the van, covering her up with a blanket. A.S. asked defendant about E.S., and he told her that E.S. was tired and had fallen asleep.

A.S. testified that their next destination was a business in Ludington where defendant had planned to submit a job application. During the drive to Ludington, A.S. felt E.S. kicking the back of her seat, but did not think her behavior was significant. When they arrived in Ludington, defendant went inside alone to fill out the application while A.S. and E.S. waited for him in the van. While they were waiting for defendant, A.S. felt the kicking intensify and called to E.S., but she did not respond. A.S. took E.S. out of her car seat and attempted to wake her, but was unable to do so. When defendant returned to the van, A.S. told him that something was wrong with the child and that they should take her to a hospital, but defendant told her that E.S. was just tired, and that they should let her sleep.

A.S. testified that on the drive back to Manistee from Ludington, she continued to watch E.S., and noticed that she was moving her arms sporadically and raising them above her head. A.S. told defendant again that they needed to take the child to the hospital, but defendant told her to "quit worrying" and that she was acting "crazy." When they arrived at their residence in Manistee, A.S. took E.S. out of her car seat and felt that E.S.'s skin was "burning hot." A.S. continued to try to wake E.S. and took her temperature, which was over 100 degrees. A.S. testified that she became "hysterical" and directed defendant to call 911, which he did.

Emergency medical personnel transported E.S. to West Shore Hospital and later to Helen DeVos Children's Hospital where E.S.'s treating physicians observed that E.S. was continually seizing. They diagnosed her with a subdural hematoma, retinal hemorrhages, bruising of her brain tissue, and multiple external bruises on her face, abdomen, arms, and back. E.S.'s treating physicians diagnosed the cause of her injuries as pediatric physical abuse, based on the lack of history of accidental trauma or underlying medical causes that could explain her injuries. Defendant was charged with one count of first-degree child abuse, MCL 750.136b(2), but was found guilty of the lesser-included offense of second-degree child abuse, MCL 750.136b(3).

## II. INSUFFICIENT EVIDENCE

Defendant argues that the evidence was not sufficient to support his conviction. "A challenge to the sufficiency of the evidence is reviewed de novo . . . [and] this Court reviews the record in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of a crime were proven beyond a reasonable doubt." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010) (citations omitted).

According to defendant, the prosecutor failed to demonstrate that he injured E.S., or that he did so with the requisite intent to support a finding of second-degree child abuse. We disagree. Although much of the evidence against defendant might be characterized as circumstantial, "that evidence and the reasonable inferences that arise from circumstantial evidence can constitute satisfactory proof of the elements of a crime." *People v Fisher*, 193 Mich App 284, 289; 483 NW2d 452 (1992). The evidence presented in this case gave rise to the reasonable inference that defendant committed the offense of second-degree child abuse.

Pursuant to MCL 750.136b(3), a person is guilty of second-degree child abuse if any of the following apply:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

Under MCL 750.136b(3)(a), the prosecutor was not required to prove that defendant intended to harm the victim. Rather, the prosecutor was to prove only that defendant's reckless act or omission caused the victim to suffer serious physical or mental harm and there was sufficient evidence that defendant's actions caused the same to the victim.

A.S. testified that E.S. appeared to be well and healthy on the morning of the incident, and began to exhibit symptoms only after she was left alone with defendant. In addition, police officers testified that defendant told them that E.S. was well on the morning of the incident and ate her breakfast. Defendant contradicted this evidence at trial when he testified that E.S. woke up with a slight fever and would not eat breakfast. Although this Court has held that "an inference cannot be based upon an inference, . . . [which means] that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility," an inference that defendant caused E.S.'s injuries based upon this evidence was not speculative, as defendant argues. *People v Boose*, 109 Mich App 455, 471; 311 NW2d 390 (1981). The evidence proved that E.S. was injured almost immediately before she exhibited symptoms of her brain injury. E.S.'s first treating physician testified that the trauma that caused E.S.'s injuries had occurred very recently before his evaluation of her, and that it was not possible for her to have had either a "slow bleed" that occurred over several days, or a "recurring bleed."

Another physician who evaluated E.S. testified that children who receive traumatic brain injuries, like the one suffered by E.S., do not typically behave normally afterwards. Defendant argued at trial that an incident that occurred a week before the offense date, during which E.S. fell and bumped her chin on the edge of a bathtub might have explained her injuries. However, E.S.'s treating physicians testified that the bathtub fall did not explain their "acute findings," and noted that E.S. was asymptomatic following the bathtub fall. Defendant also suggested that E.S.'s injuries could have been caused by her older siblings playing too roughly with her, but E.S.'s physicians also rejected that explanation, citing the unlikelihood of a child hitting another child with enough force to cause injuries as found in E.S., and their observation that E.S.'s pattern of bruising was not consistent with an accidental fall. Based on this evidence, as well as A.S.'s testimony that E.S. began to suffer seizures shortly after she had been left alone with defendant, the evidence presented at trial was sufficient to support the jury's verdict.

-3-

## III. OTHER ACTS EVIDENCE

Defendant argues that he was denied a fair trial due to the trial court's decision to admit evidence that two other children previously left in his care returned home with bruises. This Court reviews a trial court's decision to admit or deny evidence for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Two of defendant's former girlfriends, including the mother of one of his children, testified that after defendant had been alone with their children, the children came home with facial bruises. One of the witnesses testified that defendant called her at work and told her that her daughter had fallen on a decorative stone floor and that he was taking her to the hospital. Following the incident, she testified that her child was frightened of defendant and expressed a general fear of men, including family members, which she had not done before. The other witness testified that after defendant had a visitation with their daughter, she came home with bruises on her cheeks and legs, and bite marks. When the mother questioned defendant about the injuries, he did not give her a satisfactory answer as to how they had occurred.

At trial, the court admitted the evidence under MCL 768.27b as prior acts of domestic violence over defendant's objections that it was hearsay, and that the allegations were not relevant because they had not been "substantiated by DHS." On appeal, defendant argues that the evidence was not admissible under MRE 404(b) because there was insufficient evidence that he had actually committed the other acts, and because the prior acts were not sufficiently similar to the alleged act in this case, which defendant argues must have been significantly more "violent" than the prior acts to cause E.S.'s severe injuries. Defendant further argues that the evidence was not properly admitted under MCL 768.27b because the prosecutor offered it under MRE 404(b), and so notice under the statute was deficient. We are not persuaded by defendant's arguments.

MCL 768.27b(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." The statute defines domestic violence as, *inter alia*, "[c]ausing or attempting to cause physical or mental harm to a family or household member," or "[p]lacing a family or household member in fear of physical or mental harm." MCL 768.27b(5)(a)(i)-(ii). The prosecuting attorney must disclose "the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown." MCL 768.27b(2).

Defendant does not argue that he did not receive notice of the substance of the evidence less than 15 days' before trial; rather, defendant argues that notice was not proper because the prosecutor had intended to offer the evidence under MRE 404(b) rather than MCL 768.27b. This argument lacks merit. The prosecutor's witness list was timely filed more than two months before trial, and the statute requires only that the defendant be put on notice of the "substance" of

the testimony. That the court chose to admit it under MCL 768.27b rather than MRE 404(b) does not negate the prosecutor's timely notice of the evidence.

Defendant also argues that the evidence was inadmissible because the other acts "were dissimilar and irrelevant" to the charged offense, citing MRE 403 and *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012). MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Defendant argues that the evidence was unfairly prejudicial because it allowed the jury to view him as a violent child abuser with "a bad character." Although defendant does not cite evidence from the record that supports this conclusion other than the jury's verdict, our Supreme Court held in *Watkins* that "when applying MRE 403 to evidence admissible under MCL 768.27a[1], courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Moreover, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Similarly, evidence admissible under MCL 768.27b may not be excluded under MRE 403 because it allows a jury to draw a propensity inference. See *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011) (holding that "because of the similarities in the language of MCL 768.27a and 768.27b," the Legislature intended with respect to MCL 768.27b, as with MCL 768.27a, "to allow juries the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords.") (Citation and quotation marks omitted.). Pursuant to the statute, evidence "is admissible for any purpose for which it is relevant" if not otherwise excluded under MRE 403. MCL 768.27b(1). Thus, defendant's argument that the evidence was inadmissible because it allowed the jury to draw conclusions based on propensity is contrary to the statute. Moreover, defendant has not demonstrated that the jury's verdict was based on any such conclusion. The verdict demonstrates only that jurors presumably found the prosecutor's witnesses and theory of the case more compelling than the defense's. It is not, by itself, proof that the jury was unfairly prejudiced by the admission of the other-acts evidence.

Lastly, defendant argues that the evidence was inadmissible under MRE 404(b)(1). Defendant has not demonstrated that the evidence was improperly admitted under the court rule; however, to the extent that the statute conflicts with the court rule regarding the admission of this evidence, the statute prevails. See *People v Mack*, 493 Mich 1, 3; 825 NW2d 541 (2012) (holding that the reasoning of *Watkins* fully controls challenges to MCL 768.27b based on MRE 404(b)). In sum, the other acts evidence would have been admissible under MRE 404(b), MCL 768.27a and/or MCL 768.27b.

---

[1] MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

## IV. IMPROPER TESTIMONY

Defendant argues that his right to a fair trial was violated when the prosecutor asked the expert medical witness whether she had any reason to be skeptical of the medical history for E.S., given to her by A.S. The witness answered that she did not have any reason to be skeptical. Defendant argued at trial and argues now that the question was improper because it called for a "credibility determination" rather than a medical opinion. This Court reviews a trial court's decision to admit or deny evidence for an abuse of discretion. *Layher*, 464 Mich at 761. An abuse of discretion occurs where the trial court chooses an outcome falling outside a "principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

We are not persuaded by defendant's argument. The record indicates that the physician who evaluated E.S. utilized her medical history as part of her evaluation to determine whether E.S. had experienced a trauma or other event that might explain her injuries. The witness explained that in taking a history, she looks for consistency and has cause to worry about the accuracy of the history if certain details are inconsistent. The doctor testified that she did not have reason to be skeptical of E.S.'s history, as given to her by A.S., because it was largely consistent. If the doctor had evidence that contradicted A.S.'s history, it would have also been proper for her to testify to these findings as a medical expert. Her testimony that no such contradictory evidence existed was not improper.

Defendant also argues that medical witnesses' testimony that E.S.'s injuries were caused by non-accidental trauma was improper. According to defendant, the doctors' testimony was beyond the proper scope of expert testimony because it went beyond their own medical findings and improperly took into consideration information from A.S. about her and defendant's history with E.S. We disagree. E.S.'s treating physicians properly expressed their opinions as medical professionals as to how she sustained her injuries, and the record does not indicate that they relied upon A.S.'s history in giving this testimony. One of the physicians testified that the totality or "constellation" of E.S.'s injuries pointed him toward a diagnosis of non-accidental trauma. According to the witness, in his experience as a medical professional, subdural hematomas and retinal hemorrhages do not occur together in the absence of non-accidental trauma. This testimony was proper, and neither implicated defendant nor improperly relied upon A.S.'s history. Similarly, another physician-witness testified that she checked E.S. for signs and symptoms of any underlying disease, disorder, or condition that might explain her symptoms, and "ruled all of the underlying disorders out. And in the absence of a credible history of accidental trauma, the only thing that we were left with is non[-]accidental trauma." This testimony did not improperly go beyond the doctors' medical expertise by expressing an opinion on defendant's guilt or A.S.'s credibility. Defendant is not entitled to relief based on this issue.

## V. JURY INSTRUCTIONS

Defendant requested jury instructions on the lesser included offenses of second, third, and fourth-degree child abuse. The court initially agreed to read the instructions, but later decided to instruct the jury only on second and third-degree child abuse. On appeal, defendant argues that the trial court erred by declining to instruct the jury on child abuse in the fourth degree because the court was obligated to instruct on all relevant issues, defenses, and theories if they are supported by the evidence, citing *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595

(2005). "Issues of law arising from jury instructions are reviewed de novo on appeal, but a trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion." *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009). Because no disputed factual element was part of the lesser included offense, the trial court did not err by declining to instruct the jury on fourth-degree child abuse.

This Court has held that "[g]enerally, a lesser offense is necessarily included when the elements of the lesser offense are subsumed within the elements of the greater offense." *People v Burks*, 308 Mich App 256, 266; 864 NW2d 580 (2014) (citations omitted). "A requested instruction on a necessarily included lesser offense should be given if the charged greater offense requires the jury to find a disputed factual element that is not part of the included lesser offense, and a rational view of the evidence would support it." *Id*. at 266-267. Defendant was charged with first-degree child abuse, MCL 750.136b(2). To be convicted of this offense, a fact-finder must find that the offender "knowingly or intentionally cause[d] *serious physical or serious mental harm* to a child." MCL 750.136b(2)(emphasis added). By contrast, to be convicted of fourth-degree child abuse, the fact-finder must find that the defendant's "omission or reckless act cause[d] *physical harm* to a child," or that the defendant "knowingly or intentionally commit[ted] an act that under the circumstances poses an unreasonable risk of harm or injury to a child, regardless of whether physical harm results." MCL 750.136b(7)(a)-(b)(emphasis added). In this case, the record is clear that the victim's injuries were extremely severe. E.S.'s father testified at trial that because of the injury she sustained, E.S. had the physical and mental abilities of a one and a half year old, despite her being four years old at the time of trial. Therefore, no rational juror could have found that the victim did not suffer serious physical or mental harm and as a result the fourth-degree child abuse jury instruction was not required to be given.

## VI. SCORING OF THE GUIDELINES; SENTENCING

Defendant argues that the trial court erred in scoring 15 points each for offense variables (OVs) 8, MCL 777.38, victim asportation or captivity, and 19, MCL 777.49, for interference with administration of justice or rendering of emergency services. Defendant also objects on appeal to his score of 10 points for OV 10, MCL 777.40, exploitation of a vulnerable victim; however, defendant did not preserve this issue by objecting at sentencing. "This Court reviews a sentencing court's scoring decision to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). We remand for rescoring of OV 19 and for resentencing.

A score of 15 points is appropriate for OV 8 where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Defendant argued at sentencing that he should have been scored zero points for OV 8 because he simply did not understand the gravity of the situation when E.S. first began to suffer symptoms of her brain injury or recognize that she needed emergency medical treatment immediately. Defendant further argued that he had not tried to take E.S. "to a place of greater danger" by driving her home to Manistee rather than to a hospital in Ludington.

-7-

We agree with the trial court that 15 points was the appropriate score for this variable. Although the victim's home was not inherently more dangerous than the van, by driving the victim there instead of to a hospital, defendant was responsible for a crucial delay in getting E.S. medical care. We agree with the court's finding that defendant's conduct resulted in a delay of 40 minutes to an hour in obtaining emergency medical treatment for E.S. Whether defendant intended for the victim to suffer additional harm by taking her home is not significant for purposes of the statute because the statute does not include a requirement that 15 points may only be scored where a defendant *intended* to put the victim in greater danger. Rather, the statute states only that "the victim was asported to another place . . . or to a situation of greater danger." MCL 777.38(1)(a). Although the court misstated that defendant had taken the victim to a "place" rather than a "situation" of greater danger, the essence of the court's decision was not error. See *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000) (stating that "[o]rdinarily, when a lower court reaches the right result, even for the wrong reason, this Court will affirm.").

Defendant argues next that the trial court improperly scored 15 points for OV 19. Fifteen points are assessed for this variable where "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). According to defendant, he is entitled to a score of zero for OV 19 because he did not use force or the threat of force to prevent A.S. from taking E.S. to the hospital, and he called 911 once they returned home to Manistee. Defendant also notes that he cooperated with emergency medical personnel when they arrived at his residence and did not try to prevent them from rendering emergency services. In upholding defendant's score, the sentencing court stated that "the key phrase in the criteria is 'or the rendering of emergency services' and that's what he interfered with by refusing to take the child to the hospital in Ludington." We disagree with the court's reasoning, and conclude that defendant is entitled to a score of zero points for OV 19.

We find the trial court's reasoning entirely understandable, but it effectively expands OV 19 to include interference with any aspect of emergency services, including the initiation or acquisition of services. Additionally, it would convert OV 19 into a reformulation of OV 8. Contrary to the trial court's interpretation, we believe that the word "rendering" in OV 19 was intended as a limiting term rather than an expanding one. Interference with the rendering of emergency services, then, contemplates that such services are already underway, would be underway but for some physical act by the defendant to preclude it, or otherwise are a very limited number of causal steps away from completion but for a physical act of defendant. Force or threat of force involves "'the exertion of strength and physical power.'" *People v Passage*, 277 Mich App 175, 178; 743 NW2d 746 (2007), quoting Random House Webster's College Dictionary (2001). While defendant certainly made matters worse by refusing to take the child to a hospital immediately, and he may have had a special obligation to do so considering he caused the injuries in the first place, the emergency services at issue here are simply too causally attenuated for the kind of interference contemplated by OV 19. However, the trial court may on remand conclude that the guidelines give insufficient weight to the facts as stated above.

We are also not persuaded by the prosecutor's argument that defendant should be scored 10 points for this variable based on his denial of wrongdoing to an investigating police officer. In *People v Hershey*, 303 Mich App 330, 343-344; 844 NW2d 127 (2013), we stated that:

> [d]ecisions of both this Court and our Supreme Court have held the following conduct to constitute an interference or attempted interference with the administration of justice: providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding. [Citations omitted.]

The Court in *Hershey* further stated that acts subject to this variable in some way hinder the judicial process by, for instance, intimidating witnesses or deceiving police investigators in an effort "to prevent incriminating evidence from being used throughout the process of administering judgment . . . " Id. at 344. Based on *Hershey*, a score of 10 points is not appropriate solely because of defendant's general denial of wrongdoing to law enforcement officers. We are not convinced that defendant's denial of any wrongdoing, unlike the giving of a false name to police as was the case in *People v Barbee*, 470 Mich 283, 287-288; 681 NW2d 348 (2004), hampered the judicial process in any way, including the investigation by law enforcement. Defendant is entitled to a score of zero points for this variable. Therefore, resentencing is required, as defendant's total OV score will be reduced from 75 points to 60 points, indicating a guidelines range of 29 to 57 months. See MCL 777.64.

Defendant also argues that the trial court engaged in judicial fact-finding in scoring offense variables 8, 10, and 19, which increased the floor of the range of permissible sentence in violation of *Alleyne v United States*, __ US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013) and his right to due process. We do not address defendant's argument as to OV 19, as we have already determined it should be rescored at zero points. Otherwise, defendant's argument is not persuasive because he has not demonstrated that the trial court engaged in fact-finding beyond facts found by the jury in scoring the variables. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines were constitutionally deficient under the Sixth Amendment to "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." Id. at 364. Defendant does not cite the facts found by the trial court that went beyond those established by his guilty verdict, and our review of the record shows no such fact-finding. With regard to OV 8, A.S. testified that when E.S. began to experience symptoms, defendant ignored her request to take her to a hospital in Ludington and instead drove to Manistee. In addition, defendant testified that he drove E.S. home to Manistee instead of to a hospital, though he claimed it was at A.S.'s request. Based on this evidence, the court concluded that defendant had asported the victim to a situation of greater

danger, and properly scored OV 8 at 15 points. No additional fact-finding beyond what defendant admitted and the jury had presumably found was required in order to support the court's score for this variable. Therefore, defendant is not entitled to remand under *Lockridge* based on the court's scoring of OV 8.

The record does not indicate that the trial court engaged in any judicial fact-finding concerning OV 10, as defendant did not contest his score for this variable at sentencing. On appeal, defendant does not offer any argument as to the additional facts the trial court found in order to score this variable at 10 points. Defendant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give an issue only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (recognizing that "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Thus, we conclude that defendant has not shown a *Lockridge* violation with respect to OV 10.

Affirmed in part, and remanded for rescoring of OV 19 and resentencing in accordance with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien