PEOPLE *v.* MORSE.

Intoxicating Liquors—Sufficiency of Evidence—Instruction.
In prosecution for possessing and furnishing moonshine whisky, evidence as to intoxicating nature of liquor possessed and furnished, *held,* insufficient to justify instruction that, if jury believed the testimony, if that convinced them beyond reasonable doubt, it would be their duty to convict. Clark and Sharpe, JJ., dissenting.

Error to Newaygo; Barton (Joseph), J. Submitted October 17, 1929. (Docket No. 149, Calendar No. 34,437.) Decided January 24, 1930.

Floyd Morse was convicted of violating the liquor law. Reversed.

*William J. Branstrom,* for appellant.

Wiest, C. J. The information charged defendant with the possession of moonshine whisky, and also with furnishing such whisky to one Dick Evans, and, upon trial by jury, he was convicted. Defendant reviews by writ of error, presenting the question of whether the evidence justified the verdict. Defendant offered no proofs, and, at the close of the testimony of the prosecution, moved the court to direct a verdict of not guilty. The motion was denied and the jury instructed:

"If you believe the testimony of the witnesses, if that convinces you beyond a reasonable doubt in this case, it would be your duty to convict. If it does not, it would be your duty to acquit."

The motion, denial thereof, and the instruction, present the legal question for our consideration.

Peggy Lenhard testified that, at her home one evening, defendant and several others were present, and some of those present said that they would like to have a drink, and defendant went outside and brought in a glass gallon jug, the contents of which "had very much the appearance of, oh, dark colored tea," and drinks were given from the jug, and a pint bottle filled and given by defendant to Evans. No witness informed the jury of the nature of the liquor or said that it smelled like whisky or was intoxicating. Evans was a witness, and said he did not know whether the liquor was intoxicating or contained alcohol, that it did not intoxicate him, although he "felt the effects of it a little bit." The liquor was not produced. The evidence did not show the liquor to have been intoxicating or disclose facts justifying a reasonable inference that it was intoxicating. The evidence creates a suspicion or conjecture of the nature of the liquor, but that is not enough. No witness informed the jury that the liquor was intoxicating, and the court was in error in giving the mentioned instruction. The presumption of innocence and the rule of reasonable doubt still prevail, and difficulty experienced by the prosecution in proving a charge lets down no safeguards. We do not pass upon defendant's guilt or innocence, but only upon whether the evidence, in point of law, justified the verdict. The question has lately been considered by courts in liquor prosecutions.

In *Cox* v. *Commonwealth,* 140 Va. 513 (125 S. E. 139), the truism that "mere suspicion, however grave, is not sufficient to support a verdict of guilty," was applied.

In *Parham* v. *State,* 127 Miss. 8 (89 South. 775), Parham furnished a half-gallon fruit jar "full of

something'' out of his smokehouse, and was paid $10 for it. The person to whom he furnished it testified that ''he did not know what this 'something' was; that he did not know whether it was whisky or whether it was intoxicating.'' The court said:

''There is no testimony in this case upon which a jury could believe beyond a reasonable doubt that the contents of the half-gallon fruit jar was intoxicating liquor. While we might strongly suspect that the object and purpose of the visit of the young gentleman to the defendant was to purchase intoxicating liquor, the testimony is absolutely silent as to the contents of the fruit jar, except that it was white in color. This witness made no examination of it, but merely assumed that it was the 'something' they wanted for the musicians. Before the defendant could have been convicted in this case, however, the testimony must have further shown that this 'something' was intoxicating liquor, and this the testimony fails to show.''

See, also, *State* v. *St. Clair,* 247 S. W. 203 (Springfield Court of Appeals, Missouri).

In *Hill* v. *State,* 99 Tex. Cr. 290 (269 S. W. 90), it was held, quoting from the syllabus:

''Where in a prosecution for the sale of intoxicating liquor, the only evidence of an incriminative character was by a witness who testified that she saw her husband purchase something white in a bottle, from the appellant and pay him money for it. That it smelled like whisky, but that she did not know whether it was whisky or not, this evidence is not sufficient to sustain a conviction, and the cause is reversed and remanded.''

See, also, *Blue* v. *State,* 21 Okla. Cr. 156 (205 Pac. 774).

In *State* v. *Weagley,* 240 S. W. 822 (Springfield Court of Appeals, Missouri), a witness testified that:

"Weagley, * * * handed him a quart fruit jar containing some kind of red liquid, and, after witness had taken a drink of same, the defendant said, 'How is that for moonshine?' Witness said that it tasted more like cayenne pepper to him. Witness testified that he did not know whether it was whisky or not and did not know whether it would intoxicate or not, as he did not drink enough to see."

The court held:

"There is no evidence in this case to sustain a conviction for the violation of any law in Missouri with which we are familiar. We will therefore let this opinion take its place in the long procession of cases, commencing with the jurisprudence of Missouri, unanimously holding that there must be some evidence that a crime has been committed to sustain a conviction."

The conviction is set aside and a new trial ordered. If additional evidence cannot be produced the defendant should be discharged.

BUTZEL, POTTER, NORTH, and FEAD, JJ., concurred with WIEST, C. J.

SHARPE, J. (*dissenting*). Mrs. Lenhard, the complaining witness, testified that, in answer to the suggestion that "they would like to have a drink," the defendant "went outside and got a bottle or a jug and brought it back in the house." They then "all took a drink," and then defendant poured some of the contents of the jug into a bottle, filling it, and gave it to Evans. She "heard something about money." She further testified:

"Q. And were they all a little bit under the influence of liquor after that, Mrs. Lenhard?

"*A.* Well, I wouldn't say that.

"*Q.* Well, were they somewhat intoxicated?

"*A.* Mr. Lenhard was the worst that night.

"*Q.* He was quite intoxicated, was he?

"*A.* Yes.

"*Q.* Now, was Mr. Morse apparently somewhat intoxicated?

"*A.* Oh, he had had a drink, but I couldn't say that he was intoxicated. Mr. Evans was not intoxicated. I didn't see him drink from the bottle he got from Morse. I think I saw the other man drink from the bottle. * * * It had very much the appearance of, oh, dark colored tea, I would call it, but without knowing or tasting it."

When they left, the defendant took the jug and put it back in his car. On cross-examination by defendant's counsel, she said:

"They all drank out of the jug. I don't know what was in the bottle Morse gave to Evans. Mr. Lenhard was the only one that was intoxicated. Mr. Evans was not intoxicated."

Evans testified:

"I saw Mr. Morse bring in a gallon jug. He volunteered to give us a drink, but I did not ask him for it, and he volunteered to get me a pint or a half a pint. * * * He gave me a bottle about a half a pint in the living room, but I did not pay him for it, but offered to pay him and he said no."

When he went outside, he and another man drank its contents. He was apparently a very unwilling witness. At first he said he felt no effects from it, but, on his attention being called to his examination taken in justice's court, he said that he felt the effects of it "a little bit." These were the only witnesses sworn.

The complaint in this case was made by Mrs. Lenhard in an apparent effort to stop the practice of her husband's friends in bringing intoxicating liquor to their house. The jury had the right to draw a fair and reasonable inference from the testimony submitted. When the defendant arrived and was told that those present "would like to have a drink," what did he think they wanted? When he got the jug and gave them a drink from it, was he satisfying their desire with water, tea, coffee, or some non-alcoholic beverage? When he filled the bottle and gave it to Evans, and Evans offered to pay him for it, what inference can fairly be drawn as to what it contained? Might not the jury, and may not we, consider the fact that the possession and sale of intoxicating liquor is forbidden by law, and that what there occurred was but the natural thing for defendant to do when he had a jug of such liquor in his possession and was willing that his friends should share it with him?

Evidence is not merely that which a witness swears to. It is that which satisfies and convinces the minds of the jury of the truth of the existence of a fact.

"Again, evidence in its effect may be such as directly to prove the fact in issue or its probative effect may be indirect by the establishment of another fact from which the fact in issue may be inferred." 10 R. C. L. p. 860.

The fact here sought to be established was that the bottle given to Evans by the defendant contained intoxicating liquor. The evidence relating thereto has been stated. Inferences are the conclusions drawn by reason and common sense and human experience from premises established by proof. Clearly, it seems to me, the jury were justified in

drawing the fair and reasonable inference from the evidence submitted that the defendant had intoxicating liquor in his possession, as charged in the information.

The judgment should be affirmed.

Clark, J., concurred with Sharpe, J. McDonald, J., took no part in this decision.