# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JONATHAN RYAN HASTINGS,

       Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 336596
Jackson Circuit Court
LC No. 15-004918-FH

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

GLEICHER, J. (*dissenting*).

The prosecution charged that defendant Jonathan Ryan Hastings violated MCL 750.145c(3) by attempting to receive child sexually abusive material while exchanging text messages with a 17-year-old high school student. The majority holds that sufficient evidence supports Hastings's conviction and that evidence of Hastings's sexual relationships with two adult women, once his students, was properly admitted under MRE 404(b). I disagree with both conclusions, and respectfully dissent.

I

Hastings communicated with the 17-year-old complainant, LG, by text message. Their initial conversations focused on sports; Hastings was a teacher and basketball coach, LG a student and cheerleader. LG shared the contents of the text messages with five friends, and consulted them regarding how to respond. Their goal was to goad Hastings into sending LG a photo of his penis.

The first photos exchanged were nonsexual "selfies." After complimenting LG on her appearance, Hastings segued into the sexual realm, importuning, "You better send real spice if you want [more pictures] from me." LG construed this as a request for a nude photo. After some discussion about a photo exchange, Hastings sent LG a picture of his bare chest and asked her to send "the good stuff." She responded by sending an Internet photo of a naked breast; he requested "both at once." LG complied by sending an Internet photo of two breasts. Hastings sent a picture of his naked buttocks and entreated, "Please spoil me, let's have it[,] all of it." She sent a picture of a woman's bottom in tight-fitting underwear, again from the Internet. He sent a picture of his bare chest from his neckline to his hip. No further pictures were exchanged, and no further requests for photos were made. Hastings and LG stopped texting each other and did not enter into a sexual relationship.

-1-

Hastings's conduct was entirely inappropriate. But the questions presented are whether Hastings's trial was tainted by the admission of inadmissible and highly prejudicial evidence, and whether the conduct with which he was charged constituted a crime.

II

The evidentiary issue is the more straightforward of the two, and its analysis helps to demonstrate that although Hastings behaved abominably, his text messages did not constitute an attempt to receive child pornography, the statutory offense for which he stood trial.

The majority holds that the trial court did not abuse its discretion in admitting the other-acts testimony of two former students of Hastings who had sexual relationships with him after they graduated from high school. According to the majority, this MRE 404(b) evidence "suggest[ed] that Hastings's interactions with the victim were motivated by his sexual desires." As the majority's statement essentially concedes, the testimony was improper propensity evidence.

In ruling on the admissibility of other acts evidence under MRE 404(b)(1), a trial court must ascertain whether (1) the prosecutor has offered the evidence for a proper purpose—one other than to show the defendant's propensity to act in conformity with a given character trait; (2) the evidence has relevance to an issue of fact of consequence at trial, MRE 402; (3) any danger of unfair prejudice substantially outweighs its probative value, in light of the availability of other means of proof, MRE 403. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). "That the prosecution has identified a permissible theory of admissibility and the defendant has entered a general denial, however, does not automatically render the other acts evidence relevant in a particular case." *Id*. at 60. The trial court still must find that the evidence qualifies as material (i.e., related to a fact "at issue" "in the sense that it is within the range of litigated matters in controversy"), and that it has probative force (i.e., "any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence"). *Id*. at 56-57, 60.

The majority recites three nonpropensity purposes for the admission of the other-acts evidence: common plan or scheme, identity, and intent. According to the majority, evidence of Hastings's relationships with two adult women, once his students, was relevant to prove that Hastings had a plan or system when he began texting LG, to demonstrate his identity as the texter, and to establish his intent to attempt to receive child sexually abusive material. All three stated reasons for admission are, indeed, legitimate grounds for the introduction of other-acts evidence. But Hastings's relationships with two adult women were not logically relevant to any of those grounds. "If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded, notwithstanding its logical relevance to character." *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998). And—critical here—the logical connection must rest on a propensity-free chain of reasoning. Other acts evidence tending only to prove a defendant's propensity to commit a crime must be excluded. *Id*. at 385.

The introduction of Mary Roe's testimony most starkly illustrates that the only probative inference flowing from the other-acts evidence was the forbidden one: propensity. MRE 404(b).

As a student, Roe had a normal student-teacher relationship with Hastings. Roe began texting with Hastings after she graduated from high school. Initially, he asked her to watch his dog; she declined. Eventually they met at his house and had consensual sex; she was 19 years old at the time. Roe denied that she and Hastings ever exchanged photos or photo requests. She denied having been pressured or coerced into a sexual relationship with Hastings.

What issue of consequence to Hastings's trial did Roe's testimony advance? Hastings was on trial for attempting to receive child sexually abusive material from a 17-year-old student. Pursuant to the statute under which he was charged, the "material" Hastings allegedly sought to receive was "erotic nudity," defined as "the lascivious exhibition of the genital, pubic, or rectal area of any person." MCL 750.145c(1)(h). Since he never exchanged erotic nudity (or any photos at all) with Roe, her testimony did not supply evidence of a common plan or scheme. Other than texting (likely the most common form of communication that now exists for people of Hastings's and Roe's ages), nothing that occurred between them was even remotely common or similar to Hasting's interactions with LG. Rather, this evidence supported Hastings's propensity to engage in sex with former students.

Texting alone does not support a plan. "General similarity between the charged and uncharged acts does not . . . by itself, establish a plan, scheme, or system used to commit the acts." *Sabin*, 463 Mich at 64. Rather, there must be "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id*. at 64-65 (cleaned up).[1] A high degree of similarity is required—more "than that needed to prove intent, but less than that needed to prove identity," although the plan itself need not be unusual or distinctive. *Id*. at 66.

"To satisfy the definition of a true plan, the prosecution must shoulder the burden of proving that in fact and in mind, the defendant conceived of a goal or objective larger than commission of the individual crimes." Imwinkerlried, *The Plan Theory for Admitting Evidence of the Defendant's Uncharged Crimes: A Microcosm of the Flaws in the Uncharged Misconduct Doctrine*, 50 Mo L Rev 1, 9 (1985). Hastings's texts with Roe do not suggest that he harbored a goal of receiving erotic material. It suggests that he liked to sleep with young women, an inference not probative of the crime with which he was charged, and an inference relevant only to his character. Other than the use of texting, there were no similarities. Roe's testimony was not logically relevant to show that Hastings acted in accordance with a common plan or scheme.

Similarly, Hastings's identity as the sender of the texts to LG was not advanced by Roe's testimony. Identity serves as an intermediate inference under MRE 404(b) only if "the circumstances and manner in which the two crimes are committed are so nearly identical in method as to earmark the charge offense as the handiwork of the accused. . . . The commonality of circumstances must be so unusual and distinctive as to be like a signature." *People v*

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

*Golochowicz*, 413 Mich 298, 310-311; 319 NW2d 518 (1982) (cleaned up).[2]   There was no distinctive "commonality of circumstances" uniting Hastings's texts with Roe and his texts with LG.  No photos were involved.  Everyone texts; there is nothing unique about using texts as a substitute for talking.  This theory of admissibility, too, lacks merit.

The prosecutor's third option, intent, fares no better.  Hastings's relationship with Roe was relevant only to his "lustful disposition"—his character for sexual entanglements with young women.  The majority essentially admits this by justifying the admission of Roe's testimony on the ground that it "suggest[ed] that Hastings's interactions with the victim were motivated by his sexual desires."

Intent was generally at issue in this case, as the prosecution bore the burden of proving that Hastings intended to attempt to receive child sexually abusive material.  But intent was not a *litigated* issue, or even a contested issue, as Hastings made no claim that he accidentally or mistakenly texted LG.  Before trial, he denied that he had sent the incriminating texts, claiming that his phone was lost or stolen.  By the time the trial began, this defense had evaporated.  Although Hastings never admitted that the phone sending the texts to LG was his, he did not defend the case by arguing that he had not meant to send the texts, or that he mistakenly sent them to LG rather than to someone else.  Assuming the jury believed that Hastings had sent the texts to LG, his intent to send them was undisputed.

To be admissible under MRE 404(b), the other acts evidence had to be probative of Hastings's intent to violate MCL 750.145c(1)(h) rather than to Hastings's sexual propensities or proclivities.  There is no evidence that Hastings sought erotic nudity from Roe, and therefore there can be no inference that he intended to do so.  Hastings's intent to develop a sexual relationship with Roe tells us nothing about the likelihood that he intended to seek erotic nudity from LG.  Assuming that intent was truly within the range of litigated matters in this case, the only inferential connection between evidence of Hastings's relationship with Roe is the forbidden one: that Hastings enjoyed sexual encounters with young women.

The testimony of the second witness, Jane Doe, presents a slightly closer question, but only regarding intent.  Doe's relationship with Hastings began during high school when the two communicated via Twitter.  Doe was 18 years of age at the time. After she graduated from high school, Doe and Hastings shared phone numbers and had casual text-messaging conversations as well as phone calls.  The two exchanged nonsexual photos.  The conversations progressed to "like a flirting type of exchange. . . . I guess you would call it innocent flirting back and forth." The discourse evolved into more overtly sexual talk, and Hastings asked Doe to "[s]end me something sexy."  She specifically denied that Hastings requested "something naked," but nevertheless she sent nude pictures of herself.  Hastings never sent sexual pictures of himself. Sometime thereafter, the two entered into an entirely consensual sexual relationship.  The relationship continued into Doe's second year of college.

---

[2] *Golochowicz*'s analysis regarding the use of identity under MRE 404(b) remains vital when, as here, the proponent of other acts evidence employs a modus operandi theory.  See *People v VanderVliet*, 444 Mich 52, 66; 508 NW2d 114 (1993).

Although Doe sent Hastings nude photos, her testimony included none of the hallmarks of a common plan or scheme. Hastings and Doe, two adults, developed a romantic relationship. Doe's description of the consensual nature of the relationship, and the manner in which it evolved, demonstrate that this was not a "plan" or "scheme" to obtain photos.[3] Rather, two people conversed by phone and text, flirted, decided to have sex, and one sent the other some nude photos. No evidence supports that Hastings hatched a plot or devised a scheme to receive erotic nudity from a child or, for that matter, from an adult.

For the same reasons, evidence of Doe's relationship with Hastings tells us nothing about identity. Aside from Hastings's request that Doe send him something "sexy," there are no common and unusual circumstances linking Hastings's text messages with MR and his texts with LG.

The majority holds that Hastings's sexual relationship with Doe was relevant to "whether Hastings sent text messages to the victim with the intent to obtain sexually explicit pictures from her." Again, Hastings never claimed that the texts sent to LG were accidental or unintended. But assuming that intent was truly at issue, that Doe sent Hastings a nude photo of herself in response to a request for "something sexy" does not support an inference that Hastings sought "a lascivious exhibition of [Doe's] genital, pubic, or rectal area." The two people involved were adults enjoying a sexual relationship. Their intent to share photos in that context is simply not probative of Hastings's intent to receive erotic nudity from a child.

Doe's description of her relationship with Hastings had very little to do with photos, and a lot to do with overtly sexual contact. No evidence or inferences supported that Hastings became involved with Doe so that he could obtain photos. Rather, the prosecution introduced and used the evidence of their sexual relations to support a pure propensity inference: that Hastings had a sexual predilection for young women. To the extent that Hastings's sexual relationship with Doe is logically relevant to his intent to attempt to receive child sexually abusive material from LG, the connection is through the intermediate inference of bad character. Because Hastings craved sex with young women like Doe, the majority reasons, he must have intended to obtain erotic nudity from LG. That is precisely the inference forbidden under MRE 404(b).

By introducing evidence of Hastings's sexual relationships with two younger women (Hastings was 33 years old when the offense leading to his conviction occurred), the prosecution succeeded in portraying Hastings as a seducer of young women, a man interested only in sex. By design, this evidence blurred the contours of what was really at issue: whether Hastings attempted to receive "a lascivious exhibition of [LG's] genital, pubic, or rectal area." Because there was no evidence that Hastings ever asked LG for photos meeting this description, the prosecution needed something to convince the jury that he probably meant to do it. They found that evidence in the testimonies of Roe and Doe.

---

[3] Doe testified that the relationship made her feel "wanted . . . [l]ike I was important, like I had somebody who was there for me."

Our Supreme Court has condemned similar efforts to sidestep the actual charge by convincing the jury that the defendant is a bad man. A jury's "appetite for more knowledge of the defendant's background" allows the jury to convict based on propensity rather than actual guilt. *People v Allen*, 429 Mich 558, 568; 420 NW2d 499 (1988).

This appetite presents three types of impropriety. First, that jurors may determine that although defendant's guilt in the case before them is in doubt, he is a bad man and should therefore be punished. Second, the character evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no "innocent" man will be forced to endure punishment. Third, the jury may determine that on the basis of his prior actions, the defendant has a propensity to commit crimes, and therefore he probably is guilty of the crime with which he is charged. All three of these dimensions suggest a likelihood that innocent persons may be convicted.

> The danger then is that a jury will misuse prior conviction evidence by focusing on the defendant's general bad character, rather than solely on his character for truthtelling. [*Id*. at 569 (cleaned up).]

The error in admitting the other acts evidence was not harmless. Given that there was no evidence that Hastings asked LG for photos consistent with the statutory description of erotic nudity, the prosecution was forced to find another way to convince the jury that it was erotic nudity that Hastings was after. Evidence of Hastings's sexual relationships with two former students filled that gap. The sex with Roe and Doe had nothing to do with child sexually abusive activity, but it had everything to do with Hastings's character. And as the prosecution well knew,

> the problem with character evidence generally and prior bad acts evidence in particular is not that it is irrelevant, but, to the contrary, that using bad acts evidence can weigh too much with the jury and so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. [*Crawford*, 458 Mich at 384 (cleaned up).]

The "bad acts evidence" weighed too much here, as it opened the door to a conviction based on conduct other than that for which Hastings was charged. I would reverse on this ground, standing alone.

III

A second ground supports vacating Hastings's conviction. Hastings's decision to engage in "sexting" with a student was puerile and stupid. But it was not a crime. The statute at the heart of the prosecution's case required proof that Hastings sought a "lascivious exhibition" of LG's "genital, pubic, or rectal area[.]" Hastings never requested such a photo. LG never testified that she believed that Hastings sought such a photo, or that she interpreted his texts as consistent with such a request. No other evidence—including that introduced on MRE 404(b)—supported that Hastings committed the crime for which he was charged.

MCL 750.145c(3) states that "[a] person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or

conspires, *attempts*, or prepares *to* distribute, *receive*, finance, or promote *any child sexually abusive material* or child sexually abusive activity is guilty of a felony . . . ." (Emphasis added.) Hastings was charged with having attempted to receive child sexually abusive material.

"Child sexually abusive material" is:

> any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, *electronic visual image*, computer diskette, computer or computer-generated image, or picture, or sound recording *which is of a child or appears to include a child engaging in a listed sexual act*; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording. [MCL 750.145c(1)(o) (emphasis added).]

Hastings was accused of having attempted to receive an electronic visual image of a child engaging in a listed sexual act.

"Listed sexual acts" are defined in MCL 750.145c(i) as "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." The prosecution asserted that Hastings attempted to receive an electronic visual image of a child engaging in erotic nudity.

Erotic nudity is defined as "the lascivious exhibition of the genital, pubic, or rectal area of any person." MCL 750.145c(1)(h). This subsection continues, "As used in this subdivision, 'lascivious' means wanton, lewd, and lustful and tending to produce voluptuous or lewd emotions."

Piecing through the statutory elements leads to the specific charge levied against Hastings: that he attempted to receive an electronic visual image of a child lasciviously exhibiting her genital, pubic, or rectal area. There is no direct or circumstantial evidence of record supporting that Hastings attempted to receive material fulfilling this requirement.[4]

Yes, Hastings asked for pictures of both of LG's breasts. Breast photos do not constitute erotic nudity under the statute. Hastings also asked for "real spice," "the good stuff," and "all of it." Those imprecise words are not requests for erotic nudity either, as the statutory term is highly specific and limited to a lascivious exhibition of a child's genital, pubic or rectal areas.

---

[4] Hastings's second conviction, for using a computer to commit a crime, MCL 750.145d(1)(a), flows from his use of his cell phone to communicate for a purpose proscribed under the primary charge, MCL 750.145c.

This Court has construed the term "erotic nudity" as used in MCL 750.145c(i) as excluding "innocent" depictions of child nudity, but encompassing "the use of an otherwise benign image of a child exhibiting ordinary nudity to create what could fall within the definition of erotic nudity[.]" *People v Riggs*, 237 Mich App 584, 590, 593; 604 NW2d 68 (1999). Under a similarly worded federal statute, "graphic or simulated lascivious exhibition of the genitals or pubic area" qualify as "sexually explicit conduct." 18 USC § 2256(2)(B)(iii). The United States Court of Appeals for the Sixth Circuit and other federal courts apply the factors set forth in *United States v Dost*, 636 F Supp 828, 832 (SD Cal, 1986), in making a determination of whether a photograph meets that statutory standard. See *United States v Hodge*, 805 F3d 675, 680 (CA 6, 2015). The *Dost* factors include, among other things, "whether the focal point of the picture is the minor's (or another person's) genitalia;" "whether the setting or pose is customarily associated with sexual activity;" and "whether sexual coyness or willingness to engage in sexual activity is suggested." *United States v Shuster*, 706 F3d 800, 807 (CA 7, 2013). One court applying the *Dost* factors has concluded that "the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *United States v Griesbach*, 540 F3d 654, 656 (CA 7, 2008).

Because Hastings never expressly requested photos meeting the definition of "erotic nudity," the question is whether the evidence reasonably supports an inference that he attempted to obtain such photos. Viewing the evidence in the light most favorable to the prosecution, I discern no reasonable inference fairly supporting that Hastings attempted to receive a photograph *specifically* depicting LG's "genital, pubic or rectal area."

An inference is a logical conclusion reached after consideration of record facts. A reasonable inference drawn from established facts suffices to support a conviction. But "[i]nferences . . . may not be based on evidence that is uncertain or speculative or that raises merely a conjecture or possibility." *People v Fisher*, 193 Mich App 284, 289; 483 NW2d 452 (1992). "While the trier of fact may draw reasonable inferences from facts of record, it may not indulge in inferences wholly unsupported by any evidence, based only upon assumption." *People v Petrella*, 424 Mich 221, 275; 380 NW2d 11 (1985).

No evidence suggested that the terms "real spice," "the good stuff," and "all of it" referred to a photograph meeting the definition of erotic nudity. None of the three witnesses who exchanged text messages with Hastings suggested that he requested erotic nudity, as that term is statutorily defined. The prosecution presented no evidence whatsoever regarding the colloquial meaning of terms used in Hastings's texts. LG testified that she assumed Hastings wanted a nude photo of her. But a nude photo is not "erotic nudity" unless it focuses lasciviously on a child's genital, rectal, or pubic areas, and there is no evidence that Hastings attempted to receive material of that sort. To reach the conclusion that the terms "real spice," "the good stuff," and "all of it" really mean a lascivious display of LG's "genital, pubic or rectal area," the jury had to guess what was in Hastings's mind. And while juries are commonly called upon to infer the

contours of a defendant's mental state, they must do so based on evidence and reasoned inference, not wild speculation.[5]

In a somewhat analogous case, the Michigan Supreme vacated a conviction because the jury's verdict was based on speculation rather than evidence. In *People v Morse*, 249 Mich 336; 228 NW 712 (1930), the defendant was charged with possessing and distributing moonshine whiskey. The prosecution presented evidence that the defendant had distributed the drink at an evening gathering, pouring it from a gallon jug he had retrieved from outside. *Id*. at 337. No witness testified that the liquid smelled like whiskey or was intoxicating, although one of the imbibers "felt the effects of it a little bit." *Id*. "The liquor was not produced" at trial. *Id*. This evidence was not sufficient to prove that the defendant served intoxicating liquor, the Court declared, reasoning:

> The evidence did not show the liquor to have been intoxicating or disclose facts justifying a reasonable inference that it was intoxicating. The evidence creates a suspicion or conjecture of the nature of the liquor, but that is not enough. No witness informed the jury that the liquor was intoxicating, and the court was in error in giving the mentioned instruction. The presumption of innocence and the rule of reasonable doubt still prevail, and difficulty experienced by the prosecution in proving a charge lets down no safeguards. [*Id.*]

The definition of "erotic nudity" is highly specific, yet Hastings's words tell us nothing specific about what he attempted to receive. The majority skims over this evidentiary gap by blurring the distinction between nudity and erotic nudity and suggesting that a request for the former sufficed for conviction. Conspicuously absent from the majority opinion is an analysis of how Hastings' actual requests satisfied the actual words of the statute. The trial court made the same error, ruling:

> [B]ased on the exchanges that the jury heard, his attempts to get her to send him nude pictures would satisfy the requirements of the statute and a reasonable juror could conclude that the defendant wanted those nude pictures

---

[5] The majority insists that Hastings's conduct was "criminal" because the jury could infer that although he never asked for a photo meeting the definition of erotic nudity, he really wanted erotic nudity. But even when the crime is one of attempt, our justice system does not punish people for their impure thoughts. An attempt conviction requires proof of both an intent to engage in a proscribed activity, and the commission of an overt act in furtherance of the intent. *People v Coleman*, 350 Mich 268, 279; 86 NW2d 281 (1957). Words may suffice as an overt act. *Id*. But in my view, the words must mark the statement as criminal in nature, otherwise we come dangerously close to punishing only the intent. Here, the majority concedes that Hastings did not specifically request a nude photograph from LG; LG and her friends "deduced" that was what he really wanted. In other words, Hastings intended to obtain illicit pictures. The flaw in the majority's reasoning is that Hastings never actually *asked* for erotic nudity; he may have harbored an intent to receive it, but because we do not punish thought crimes, that is not enough.

from the 17[-year-]old which would make him guilty beyond a reasonable doubt.[6]

I do not know why the Legislature decided to omit "nudity" and "breasts" from the listed sexual acts linked to the crime of attempting to receive child sexually abusive material. But the absence of these terms is telling. The Legislature obviously intended that a request for nudity or breast images would not constitute a crime, and based on the evidence presented, a rational finder of fact could not intuit that Hastings asked for anything more.

I would vacate Hastings's convictions on sufficiency grounds, or alternatively award him a new trial.


/s/ Elizabeth L. Gleicher

---

[6] The prosecutor compounded the confusion by contending in his closing argument that nudity was enough:

> But after reviewing this entire document in its totality [the transcript of the text messages], the entire conversation, if you conclude that he is asking for a full nude photograph, if he is asking for photographs that *might* show the pubic region, the rectal region, or the genital region, you should find him guilty. [Emphasis added.]

A full nude photograph is *not* the same thing as erotic nudity; nor is a photo that "*might* show the pubic region, the rectal region, or the genital region."